HERBERT SMALL, Suing on Behalf of Himself and All Other Bondholders and Creditors, Similarly Situated, Appellant, Respondent, *v.* FRANCIS DEC. SULLIVAN and Others, Respondents, Appellants.

First Department, December 17, 1926.

Corporations — representative action by bondholders to have consolidation with another corporation declared fraudulent, to have it declared that dividends paid by consolidated corporation were, in fact, paid by plaintiff's corporation while capital was impaired, and to require defendant directors to account — sufficiency of defenses considered and determined.

This is a representative action by bondholders to have declared illegal and fraudulent the consolidation of their corporation with another and to have declared that certain dividends paid by the consolidated corporation were, in fact, paid by their corporation while its capital was impaired and to require the defendant directors to account for their disposition of the property of the corporation issuing the bonds and for loss sustained by the payment of the dividends.

The first defense, that the defendants are not liable to the bondholders based on a provision in the " no recourse clause " of the trust mortgage to the effect that the directors shall be free from " any and all personal liability either at common law or in equity, or by statute " under or by reason of the obligations of the agreement, which defense alleges that all the acts done by the defendants, as directors, were done by them in good faith and without fraud, states a defense to the cause of action. If, as seems probable, that as to some of the directors constructive notice rather than actual knowledge will be plaintiff's reliance on the trial, the allegations of good faith may be regarded as new matter.

The second defense, which is merely a repetition of similar elements in the first defense, is not sufficient and should be stricken out.

If the second defense is intended to allege that the bondholders, knowing of the consolidation, were bound to take some action against it, this is not a defense on the ground of estoppel, for there are no allegations of a change of position on which reliance could be had by the defendants, and furthermore, except in

so far as the second defense repeats matters alleged in the first, the allegations contained therein may be proven under a general denial.

The third defense, which alleges that under a certain plan of readjustment, which recognizes the validity of the consolidation, the bondholders deposited their bonds and received full satisfaction for all claims and causes of action, amounts to nothing more than conclusions as to the legal effect of transactions not sufficiently pleaded and, therefore, is insufficient.

The fourth defense, which sets up that the dividends were declared and paid by the consolidated company, does not meet the theory of the complaint which is that the consolidation was illegal and, therefore, that defense tenders no issue not raised by the denials, and should be stricken out.

The fifth defense, based on the theory that the mortgage trustee alone could maintain the action, is, in part, merely a denial and in other respects a conclusion unwarranted by any fact pleaded, there being indicated no provision of the trust deed which would hinder maintenance of this action at the present time, and, therefore, the defense should be stricken out.

The sixth defense, to the effect that the plaintiff has an adequate remedy at law, is unnecessary, since the allegation of the plaintiff that it has no adequate remedy at law is met by a denial.

The seventh defense, setting up the six-year Statute of Limitations on the theory that the plaintiff seeks relief under the Stock Corporation Law, is insufficient, since the complaint is brought on the theory that the consolidation was fraudulent, resulting in an illegal diversion of the assets of the corporation. If on the trial it be held that the only remedy of the plaintiff is under the statute, there would then be a variance necessitating an amendment to the complaint, in which event the defendants could plead the appropriate period of limitation.

The ninth defense, setting up another action pending, is not a defense, for the remedy of the defendants is a consolidation of the two actions and not a dismissal of the present action.

The defense interposed by certain executors of a full administration of their estates is not sufficient for it does not go to the validity of the claim made but relates merely to its enforcement if valid.

The defense in one of the answers filed by an executor attempting to set up *res adjudicata* is insufficient, inasmuch as it fails to show that the plaintiff's claim was involved in the action to settle the estate mentioned.

CROSS-APPEALS from orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of February, 1925, granting in part plaintiff's motion to strike out certain defenses.

The relief sought was granted as to two of the separate defenses, namely, the defense of an adequate remedy at law and the defense of the six years' Statute of Limitations, which were stricken out for insufficiency.

*Gustavus A. Rogers* of counsel [*Abraham Benedict* and *Eugene W. Small* with him on the brief], for the plaintiff.

*DeLancey Nicoll* of counsel [*J. Tufton Mason* with him on the brief; *Nicoll, Anable & Nicoll*, attorneys], for the defendants, executors of Daniel G. Reid, deceased.

*Charles H. Tuttle* of counsel [*Joseph S. Auerbach* and *Martin A. Schenck* with him on the brief; *Davies, Auerbach & Cornell,* attorneys], for the defendants executors of August Belmont, deceased.

*Allen Wardwell* of counsel [*William R. Carlisle* with him on the brief; *Stetson, Jennings, Russell & Davis,* attorneys], for the defendants executors of the estate of Augustus D. Juilliard, deceased.

*George S. Mittendorf* of counsel [*Edward M. Cameron, Jr.,* with him on the brief; *Geller, Rolston & Blanc,* attorneys], for the defendant executor of the estate of Edward R. Bacon, deceased.

MARTIN, J. This suit is brought on behalf of bondholders and other creditors of the Interborough-Metropolitan Company against alleged directors.

The gravamen of the action is unlawful payment of dividends, notwithstanding impairment of the capital, accomplished as planned by means of a consolidation of the Interborough-Metropolitan with a paper corporation known as " Finance and Holding Corporation " which had no assets outside of $550 in cash and had never engaged in business.

The answers deny all the important allegations of the complaint and plead various defenses. The trust deed referred to and quoted in part in the answers was before the court at Special Term.

Plaintiff sought to strike out all the defenses for insufficiency. This relief was granted in part and denied in part, and these appeals resulted.

The action is brought by an alleged holder and owner of $5,000 par value four and one-half per cent collateral trust bonds of the Interborough-Metropolitan Company on behalf of himself and others similarly situated, to have *declared illegal and fraudulent* a consolidation of these two companies, to have it declared that certain dividends, $8,233,290 in total amount, paid by the Consolidated Company were in fact paid by the Interborough-Metropolitan Company while its capital was impaired, and to require the defendants to account to the plaintiff and other bondholders for their disposition of the property of the Interborough-Metropolitan and Consolidated and for loss sustained by the payment of the dividends, which loss it is sought to recover from the defendants, jointly and severally, with interest.

The Interborough-Metropolitan Company was a domestic corporation organized in 1906, with an issued and outstanding capital of $45,740,000 of preferred stock and $93,262,192 of common stock, it having also issued $67,825,000 face value of four and one-half per cent collateral trust gold bonds pursuant to a trust agreement with Windsor Trust Company, as trustee, which was

afterwards succeeded as trustee by the Empire Trust Company. The complaint alleges that the Interborough-Metropolitan Company was a holding company which before April 23, 1915, had sustained large losses by reason of its holdings in certain other corporations and had suffered an impairment of its capital to the extent of $80,000,000 and upwards; that it had accumulated in its treasury a large sum of money, resulting from the payment of dividends by the Interborough Rapid Transit Company, but such funds were not applicable to the payment of dividends on the Interborough-Metropolitan stock because it had no surplus profits and because in view of its impairment of capital, earnings did not warrant dividends; and that none had been paid by the Interborough-Metropolitan upon its preferred stock for upwards of seven years before April 23, 1915.

It is also alleged that the Interborough-Metropolitan directors, some of whom are now dead and their estates being represented by their personal representatives, conceived a plan to pay dividends upon Interborough-Metropolitan preferred stock, of which they themselves were large holders; and that they speculated in the purchase of both preferred and common stock in anticipation of its rise in value when dividends would be forthcoming. According to the complaint, difficulties inherent in lack of sufficient earnings and impairment of capital could be overcome, it was thought, by a consolidation of the Interborough-Metropolitan with the Finance and Holding Corporation.

The plaintiff asserts it was arranged that the new consolidated corporation should have a capitalization less than the fair net value of the Interborough-Metropolitan assets and that part of the capital of the Interborough-Metropolitan should be paid out in the form of dividends. The Interborough Consolidated Corporation was organized in the spring of 1915 with an authorized share capital of approximately $50,000,000 divided into approximately $45,000,000 of preferred stock in addition to common stock without par value but carried at five dollars a share.

It is asserted that the liability of the Consolidated upon the aforesaid Interborough-Metropolitan four and one-half per cent bonds amounted to $67,825,000; that the fair net value of Interborough-Metropolitan assets immediately prior to the consolidation was $52,559,397.54; that the assets of the Consolidated immediately after the consolidation was the same plus the $550 which, it is said, made up the assets of the Finance and Holding Corporation; that at the time of the consolidation the fair net value of the Interborough-Metropolitan assets did not equal the par value of its issued preferred and common stock, and that after the con-

solidation the fair net value of the Consolidated assets did not equal the par value of the preferred and common stock of the Interborough-Metropolitan outstanding immediately prior to the consolidation.

The directors of the Consolidated, beginning on June 23, 1915, declared and paid quarterly dividends of one and one-half per cent upon the preferred stock of the Consolidated up to and including April, 1918, aggregating eighteen per cent, or $8,233,290, paid in cash.

The complaint further sets forth that the consolidation was illegal, a device under color of statutory authority to pay dividends not legally payable, because not paid from surplus profits, and resulted in a withdrawal of part of the capital of the Interborough-Metropolitan and a reduction thereof in a manner not authorized by law.

On or about March 28, 1919, the Consolidated was adjudicated bankrupt. In October, 1922, the successor trustee sold the collateral securing the Interborough-Metropolitan bonds and thereupon the balance of principal of the bonds became immediately due and payable. The trustee in bankruptcy of the Consolidated fully administered the estate, and paid the final dividend.

The bondholders and creditors of the Interborough-Metropolitan have received less than thirty per cent of the amount of their claims and there are no further assets available to them, so that the plaintiff and other bondholders have suffered a loss of at least seventy per cent of the par value of their bonds with interest from October 1, 1918. It is also alleged that such loss exceeds the aggregate amount of the dividends paid as aforesaid upon the Consolidated preferred stock.

The defendants at this time do not desire to challenge the sufficiency of the complaint.

The defenses which the plaintiff moved to strike out and which are to some extent differently numbered and pleaded in the various answers are: (1) the "no recourse" provision of the trust deed; (2) consolidation was permitted by trust deed and statutes, and was in good faith; (3) acquiescence and laches of plaintiff and other bondholders who deposited their bonds under a certain plan of readjustment and took and retained the benefits of the plan; (4) dividends complained of were paid from surplus profits of the Consolidated and defendants acted in good faith; (5) the cause of action, if any there be, is vested in the trustee and not in individual bondholders; (6) adequate remedy at law; (7) six years' Statute of Limitations, and (8) another action pending.

In addition, some of the defendant executors pleaded that the

estates have been administered and failure to present plaintiff's claim has the effect of barring a recovery.

The first defense pleaded article 12 of the trust agreement under which the bonds were issued which reads in part as follows: " No recourse under or upon any obligation, covenant or agreement of this indenture, or of any purchase money bond or coupon, or because of the creation of any indebtedness hereby secured, shall be had against any incorporator, stockholder, officer or director of the Company or any successor corporation, either directly or through the Company, by the enforcement of any assessment or by any legal or equitable proceeding by virtue of any' statute or otherwise. This indenture and the purchase money bonds are solely corporate obligations, and no personal liability whatever shall attach to, or be incurred by, the incorporators, stockholders, officers or directors of the Company or any successor corporation, or any· of them, because of the incurring of the indebtedness hereby authorized, or under or by reason of any of the obligations, covenants or agreements contained in this indenture, or in any of the purchase money bonds or coupons, and any and all personal liability either at common law or in equity, or by statute or constitution, of every such stockholder, officer or director, is released and waived    *    *    *."

This " no recourse clause " appears to relate principally to liability for the indebtedness or the obligations intended to be placed on the corporate borrower. It might be conceivable that, corporate liability failing on account of a defect, individual liability would be asserted in some jurisdiction, the laws of which were unfamiliar, or it might be that, though acting in good faith and in the exercise of due care, individual responsibility would result from some act or conduct on the part of directors.

It is argued for defendants that the " no recourse " clause may be regarded as releasing in anticipation and leaving to other claimants liabilities which creditors generally could enforce, such as the secondary liability of stockholders or their obligation to pay subscriptions for stock. But it cannot reasonably be read as meaning that those who might disburse corporate funds intending illegally to divert the same were to be free of all liability therefor to the bondholders, even for fraud or willful wrongdoing.

The first defense, however, sets up that " All acts by these defendants as directors    *    *    *    were done by them in good faith and without fraud; " and the clause quoted from the trust agreement provides that directors shall be free from " any and all personal liability either at common law or in equity, or by statute " " under or by reason    *    *    *    of the obligations " of the agree-

ment. Plaintiff is claiming thereunder and attempting to charge defendants with personal obligations " contained in this indenture."

Good faith here implies that under the circumstances the directors used reasonable diligence and judgment when determining that dividends should be paid. We think the clause referred to was under such circumstances intended to protect them from becoming charged because of non-payment of the corporate obligations or any part thereof.

We do not agree with counsel for the plaintiff that the provisions under consideration look solely to the past, affording protection against technical defects, and not to the future.

Nor do we accept the statement that protection cannot be thus afforded to a director, for example one serving long after the consolidation, who, innocently and with reasonable diligence and inquiry, participated in the declaration of a dividend. Conceding for the purpose of argument his obligation, to see that everything is in order, to be absolute, we see no reason for holding that he could not safely seek protection in a clause of this kind against a mere mistaken conclusion. Though it be admitted that good faith is not an answer to failure to perform a statutory duty (*Darcy v. Brooklyn & New York Ferry Co.*, 196 N. Y. 99), good faith would seem to imply innocence as well as due care and to negative the suggestion that protection of this kind against unexpected and undeserved liability is not permissible.

The plaintiff argues that defendants cannot be thus protected against acts " necessarily fraudulent," but by this is meant that the duty not to declare the dividends was such as to imply individual liability for its violation under any and all circumstances whatever. Assuming that it was thus " absolute " and that in the eyes of the law a violation is to be considered " *per se fraudulent*," it does not follow that a person acting carefully must in fact have necessarily proceeded in actual bad faith, nor that he might not protect himself in advance against liability for disbursing assets in the belief, after due investigation, that they should be disbursed.

We find plaintiff's argument somewhat confusing in at times tending to indicate that in the last analysis plaintiff relies wholly and exclusively on a statutory violation. That this is not so is indicated by the argument for plaintiff in other connections as well as by the complaint itself which alleges a scheme to fraudulently use the device of a consolidation to cover an illegal payment of dividends.

The length to which it is argued we should go is indicated by the following quotation from the brief for plaintiff: " While the directors of Inter-Met. who participated in the consolidation cannot

avail themselves of the defense of good faith because of their actual knowledge and positive acts, the defendants who became directors only after the consolidation cannot avail themselves of this defense, even if they had no actual knowledge, because the law imputes to them knowledge of the facts and circumstances of the formation of their corporation."

One might regard defendants' allegations of good faith as but contradictory of those in the complaint to the effect that defendants had knowledge and notice of the facts. But it is quite possible and indeed it seems probable that in this respect plaintiff's contention is that defendants were required by law to know the facts, that as to some of the directors constructive notice rather than actual knowledge will be plaintiff's reliance. From this point of view the allegations as to good faith may be regarded as new matter.

It is contended by plaintiff that the agreement cannot be given effect " to absolve the directors from legal responsibility for violation of the statutory provision." As will be indicated below, if plaintiff had merely charged such a violation, instead of bringing this action in equity for fraud (*Brinckerhoff* v. *Bostwick*, 88 N. Y. 52, 58), the six-year Statute of Limitations would be properly pleaded by the defendants. To put it another way, if this first defense, based on the agreement and on assertion of good faith, is sufficient because plaintiff's alleged case comes down to a violation of a statutory prohibition which is " absolute," in the sense and with the result referred to above, then the pleas of limitation mentioned below would be sufficient. But we do not take the view of the complaint which would appear to be implied by this argument against the first defense.

There was no error, therefore, in denying the motion as to the first defense.

The second defense repeats various parts of the first, including the " no recourse " clause and then proceeds to set up a provision of the trust agreement permitting consolidation " on such terms as to preserve and not to impair the lien or security under this indenture." It alleges that consolidations of corporations were permitted by statute; that this is one which preserved and did not impair said lien; that it was made in good faith; that in the absence of fraud plaintiff is estopped from claiming the consolidation to have been void, inasmuch as he was charged with knowledge of the provisions of the trust agreement and the statute.

So far as these allegations indicate any defense they are merely a repetition of similar elements of the first plea. To allow them to stand in connection with the other matter set up in the second

alleged defense would result not merely in redundancy, but they would lead to confusing contentions that they had a special significance when coupled with such other matter.

What is first introduced here does not meet any charge made by plaintiff; and it is unnecessary for defendants to plead that the consolidation was in fact or legal effect not as plaintiff alleges. These allegations tend to confuse the issues, without any purpose being served by them.

If it is intended to allege that the bondholders, knowing of the consolidation, were bound to take some action against it, this is not a defense. Mere inaction would not, until the expiration of the statutory limitation, be in point; for other elements of estoppel, such as a change of position on which reliance could be had by defendants, do not appear.

Excepting as to the extent that it repeats what is set forth in the first defense, the matter set up in the second defense may be proved under a general denial. As to it the motion should be granted.

What has just been said is applicable to the third defense so far as it is devoted to elaborating the plea of estoppel.

It also alleges that the consolidation occurred in the first half of 1915, referring to the publicity inherent in a consolidation of this kind and in the exchange of securities and trading therein, and referring as well to press notices and public discussion. This is in support of the estoppel, defectively alleged for the reason stated above. There may also be an attempt to plead an estoppel in favor of security holders who exchanged their stock and of persons who dealt in the new issues on the assumption that the consolidation was valid. These would be irrelevant matters, in a defense interposed, to a complaint such as this, by directors sued as such, after the company has been virtually wound up and no question as to canceling or reissuing securities can be raised.

The third defense proceeds to set up that the plaintiff and other bondholders deposited their bonds " under a certain plan of readjustment which recognized * * * the validity of such consolidation as regards all stockholders and bondholders of the Interborough-Metropolitan Company and the Interborough-Consolidated Company, and took and retained the benefits of the said plan of readjustment, and received in exchange for a full transfer and surrender of the legal and equitable title to their said bonds and to all causes of action then or theretofore connected therewith various considerations of value which they still retain, and surrendered said bonds and received full satisfaction for all claims and causes of action which they had by reason of having

been creditors of the Interborough-Metropolitan Company and/or the Interborough-Consolidated Company."

In the present connection we consider what is thus quoted as amounting to nothing more than conclusions as to the legal effect of transactions not sufficiently pleaded; and that this defense is insufficient.

The fourth defense, after realleging part of the first, sets forth that the dividends were declared from surplus profits arising from the business of the Consolidated Company, in good faith and without fraud. This simply begs the question, the theory of the complaint being that there never was anything but the appearance of a consolidation. No asset other than the $550 was acquired from the Finance and Holding Corporation, and its assimilation at great expense was obviously for the sole purpose of working out the scheme. Plaintiff's allegations are to the effect that the consolidation is to be disregarded, the fact being that the funds of the Interborough-Metropolitan were being illegally paid out as dividends. Of this defendants' allegations are merely contradictory, setting up that the funds were earnings of the Consolidated Company. Plaintiff must stand or fall on the theory that, the consolidation being a mere subterfuge, the dividends were paid from the funds of the Interborough-Metropolitan. Here defendants assert, in substance, that the Interborough-Metropolitan no longer existed, so that the state of its affairs could constitute no bar to disbursing the funds resulting from Interborough dividends. This is just the opposite of the position taken in the complaint, that these funds belonged to the Interborough-Metropolitan and, on account of its financial condition, could not legally be paid out as dividends. This defense, therefore, tenders no issue not raised by the denials excepting in so far as it repeats valid elements of the first defense. It should be stricken out.

The fifth defense repeats matters included in the first and proceeds to the effect that the bonds, including those held by plaintiff, were not due until April 1, 1956; that, under the trust agreement, the trustee alone could declare them due and the trustee, and not the plaintiff, would have the sole " right of action with respect to said bonds."

The complaint alleges the sale of the collateral by the trustee and that, by the terms of the trust deed, the principal became due on such sale. This statement by way of defense appears, therefore, to be in part substantially a denial. In other respects it is a mere conclusion, unwarranted by any fact pleaded, there being indicated no provision of the trust deed which would hinder maintenance of this kind of an action by plaintiff at the present time. It is

not sufficient as the statement of an affirmative defense and should be stricken out.

The sixth plea is that plaintiff has an adequate remedy at law. The complaint alleges that plaintiff is without an adequate remedy at law and a denial contained in the answer places that in issue and is sufficient without an affirmative defense to the same effect. The sixth defense should be stricken out.

For a seventh defense there is set up the six-year Statute of Limitations. The defendants rely on the Civil Practice Act (§ 48), asserting that plaintiff seeks relief under section 28 of the Stock Corporation Law of 1909* and that, as the liability is statutory, the six-year period of limitation applies pursuant to said section 48.

It is argued by the plaintiff that the liability of the directors to their corporation would depend on section 28 of the Stock Corporation Law of 1909; but that their liability to creditors exists at common law, and that this is a liability which the statute merely recognizes and declares.

In *Brinckerhoff* v. *Bostwick* (88 N. Y. 52, 58) the court said: " The liability of the directors of corporations for violations of their duty or breaches of the trust committed to them, and the jurisdiction of courts of equity to afford redress to the corporation, and in proper cases to its shareholders, for such wrongs exist independently of any statute."

As pointed out at Special Term, if plaintiff relies solely on the statute, the complaint contains much that is unnecessary. Plaintiff might rest eventually on the statute alone. But defendant is now answering a complaint which charges a fraudulent scheme by which there were illegally diverted to stockholders, assets which should have been used for the payment of debts. If it alleged the payment of dividends only, at a time when the financial affairs of the company rendered such action illegal, it might be argued with more force that the complaint alleges nothing but the violation of a statute and that the limitation provided in said section 48 of the Civil Practice Act is applicable. We take the view expressed at Special Term that the ten-year Statute of Limitations applies, and, as stated in the opinion there filed, that " The period of limitation begins to run from the date when the plaintiff's alleged loss was ascertained and computable."

As defendants have decided to reserve for the present all questions as to the sufficiency of the complaint, we assume that it states a cause of action of the general character indicated above. If at a trial it be held that the only remedy of the plaintiff is under the statute, there would then be a variance necessitating an amend-

---

* See Stock Corporation Law of 1923, § 58.— [REP.

ment. In that event defendants could plead the appropriate period of limitation. This seventh defense is, therefore, insufficient.

In some of the answers the eighth defense also sets up the six-year Statute of Limitations and as to it the motion should be granted. The same is to be said of a plea setting up a still shorter period.

The defense designated as ninth in some of the answers sets up that another action is pending, reference being made to a similar representative action commenced through the same attorneys in the name of another alleged bondholder. This is not a defense. The remedy of the defendants would be a consolidation and not a dismissal. The defense should be stricken out.

In answers filed by executors we also find a defense of full administration of their estates. This alleged defense does not go to the validity of the claim made but relates merely to its enforcement if valid. Whether the executors have so administered their estates as to have become entitled to be discharged as to this claim and whether they have been discharged will not be litigated in this action. Should plaintiff recover he might under certain circumstances be able to follow estate assets. (See Decedent Estate Law, § 150, added by Laws of 1920, chap. 919; Surrogate's Court Act, § 208.)

The sixth defense alleged in the Frazier answer should be stricken out. It is a mere denial of paragraph 52 of the complaint that prior to a certain date the plaintiff became a bondholder. It states:

" 34. She alleges, upon information and belief, that neither at the time when this action was commenced nor at any time thereafter was the plaintiff a creditor of the Interborough Consolidated Corporation by reason of the ownership of the bonds of the Interborough Metropolitan Company or otherwise."

The tenth defense in the answer filed for the executor of Edward R. Bacon attempts to set up *res adjudicata*. But it fails to show that plaintiff's claim was involved in the action to settle the estate referred to therein. Presumptively it was not. The defense alleged is insufficient.

The orders appealed from should be modified in accordance with the foregoing, and as so modified affirmed.

CLARKE, P. J., MERRELL, FINCH and BURR, JJ., concur.

Orders modified as indicated in opinion and as so modified affirmed, without costs.