Coca-Cola Bottling Company of Arkansas *v.* Jordan.

4-2725

Opinion delivered November 7, 1932.

*Buzbee, Pugh & Harrison,* for appellant.

*Edward Gordon, John B. Gulley* and *Lewis Rhoton,* for appellee.

Mehaffy, J. The appellee brought suit in the Conway Circuit Court alleging that in August, 1931, he purchased a bottle of Coca-Cola which contained a decayed

or rotten cockroach; that the appellant negligently and carelessly caused to be sold in the regular course of trade the bottle of Coca-Cola which contained the decayed cockroach.

Appellee drank part of the contents of the bottle before he discovered the cockroach. As the result of drinking part of the contents, he became a victim of ptomaine poison, from which he suffered, and is still suffering, and will suffer to some extent the rest of his life.

Appellee further alleged that, since swallowing the contents of the bottle, he had been unable to eat and digest any normal meal, but was subject to violent vomiting, which caused him great pain and humiliation; that he was permanently injured. There were other allegations of suffering and inability to sleep.

The defendant filed answer denying all the material allegations of the complaint.

The evidence offered by appellee tended to show that he bought a bottle of Coca-Cola from the Arkansas Bottling Works on West 7th Street, Little Rock, Arkansas, and drank a part of it. It was bought from the Johnson Grocery Company. He drank part of it and swallowed something that was in the bottle, and called attention to Mrs. Johnson. She examined it and said that there was a bug in the bottle. Appellee showed the bottle to the manager of the appellant, who examined it and said that there was a bug in the bottle. Later appellee delivered the bottle to Dr. Scoggin.

The drinking from the bottle made appellee sick. Before he drank it he weighed 207 pounds, and now weighs 35 pounds less. Mrs. Johnson testified corroborating the statement of appellee, and physicians testified as to his physical condition.

The appellant's testimony tended to show that a cockroach in the bottle would not produce the effect testified to by appellee and his witnesses. Appellant also introduced evidence showing the manner in which the Coca-Cola was manufactured and bottled, and showed that it

was impossible for anything to get into the bottle unless some of the inspectors were negligent.

There was a verdict and judgment for $4,000, and the case is here on appeal.

Appellant insists on a reversal of the judgment because of remarks made by appellee's counsel in the opening statement to the jury.

Several depositions had been taken by the appellee before the trial, and immediately before the trial began the appellant's attorney called the attention of the court to the depositions, and objected to them as incompetent and irrelevant, and objecting at that time to counsel for appellee in making his opening statement to make any reference to said depositions.

The court, at that time, overruled the objections of appellant, but did not pass on the competency or admissibility of the depositions.

In making the opening statement to the jury the appellee's attorney said: "They claim that no foreign substance gets into it. You can see what that is (here exhibits bottle). A reputable citizen of Little Rock, Mr. Bellingrath, testifies—he will just tell you it is absolutely impossible for any foreign substance to get in and remain in a bottle of Coca-Cola. We propose then to produce that."

Appellant objected, and the attorney for appellee stated that he wanted the record to show the depositions would only be offered in rebuttal if they undertake to show that it can't get in.

The appellee's attorney further said in his opening statement: "The deposition of Quinn Glover, son of Congressman Glover, will tell you that he bought a Coca-Cola—bought it from these people, with foreign substance in it. I will not go much in detail about it. You understand the situation."

The appellant's attorney then objected and excepted to counsel's statement. After this the evidence was introduced, and at the close of appellant's testimony the appellee offered the depositions that had been referred to

before the beginning of the trial. The court examined the depositions and held the testimony incompetent. The court did not state why the depositions were incompetent, and it is not necessary for us to pass on the admissibility of this evidence.

Appellant cites *Kansas City Sou. Ry. Co.* v. *Murphy*, 74 Ark. 256, 85 S. W. 428, and quotes at length from the opinion in that case. The court said in that case: "The control of argument is in the sound judicial discretion of the trial judge, and it is his duty to keep it within the record and within the legitimate scope of the privilege of counsel, and this he should do on his own initiative; if he fails to restrain counsel, then it is the right of opposing counsel to object to the argument. This should be a definite objection to the alleged improper remarks, and call for a ruling of the court thereupon, and if the court then fails to properly restrain and control the argument within its proper bounds, and to instruct the jury to disregard any improper remarks and admonish the counsel making it, then an exception should be taken to the action of the court. A mere exception to argument interposed to make a record in the appellate court, and not calling for a ruling of the trial court, is insufficient."

The court also said in that case: "However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that discretion is not an arbitrary one, but that sound judicial discretion the exercise of which is a matter of review."

In the instant case objection was made before the appellee's attorney had begun his opening statement; the attorney for appellant had objected to the depositions that had been taken, and objected to the counsel for appellee in his opening statement making any reference to the depositions. The court overruled this objection, and did not at that time pass on the question of the admissibility of the depositions.

The appellee's attorney then, in his opening statement to the jury, made the statement above set out, but

the appellant did not take the steps which the case referred to by it, *K. C. S. Ry. Co.* v. *Murphy,* says must be taken.

One of the things required is that he should call for a ruling of the court upon his objection. No ruling of the court was made, and none called for. No request was made by appellant to instruct the jury to disregard the remarks of the attorney, or to admonish counsel making it. Moreover, there was nothing in the remark of the attorney that could have prejudiced the jury against the appellant. The circuit judge, not having passed on the admissibility of the depositions up to that time, probably was uncertain himself as to whether or not they were admissible. When the depositions were finally presented to the circuit judge, he held that they were incompetent. Certainly up to that time the appellee's attorney had not intentionally stated anything that he expected to prove which he thought was incompetent. In making opening statements to the jury, the attorneys should confine themselves to a statement of the facts. Apparently this is what the attorney for the appellee was endeavoring to do.

Appellant then calls attention to *Scripps* v. *Reilly,* 35 Mich. 371, 24 Am. Rep. 575. In that case the court said: "The trial judge must always have a very large discretion in controlling and managing the routine proceedings at the trial, and it is not necessary to specify the matters to which such discretion extends. It applies beyond doubt to the addresses of counsel as well as to other incidents. But it must be a reasonable, a legal, discretion, and whether it be so or not must depend upon the nature of the proceeding on which it is exercised, the way it is exercised, and the special circumstances under which it is exercised. It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and, unless it turns out that he has not merely misstepped, but has departed widely and injuriously, an appellate

court will not re-examine. It will not do it when there is no better reason than its own opinion that the course actually taken was not as wise or sensible or orderly as another would have been.''

We call attention to the fact that in the *Scripps* v. *Reilly* case, *supra,* the attorney in making his opening statement, read at length to the jury a series of articles published in the newspaper during the course of several months. About 20 articles were read to the jury as part of the opening statement, and the court held that they were calculated from their character to influence the minds of the jurors against the plaintiff in error.

Appellant then calls attention to *German-American Insurance Co.* v. *Harper,* 70 Ark. 305, 67 S. W. 755. They quote from that case: ''These remarks were gravely prejudicial. True, they were not made under the sanction of an oath as a witness. But the statement of matters of fact by counsel of high character and excellent standing in the profession might be as readily accepted and believed by the jurors, and make as profound and ineradicable impression upon their minds, as if they had been uttered under oath.'' The counsel in that case made the following statement to the jury: ''Gentlemen of the jury, if you knew Marshall's business methods, you would say, 'God save the plaintiffs, and God save all those who deal with him'!'' The court held that these remarks were prejudicial.

This court has often held that the trial court must have a very large discretion in managing and controlling the proceedings at the trial, and, even after objection had been made, if the court had overruled the objections, and the appellant had taken exceptions, it would not be cause to reverse the case, because we are of the opinion that there was no abuse of discretion.

Appellant next insists on reversal because the court refused to give its instructions numbers 2 and 3. They are as follows:

"No. 2. You are instructed that no presumption of negligence arises against the defendant, and, before the plaintiff is entitled to recover against it, he must affirmatively prove by a preponderance of the evidence that his injuries, if any, arose on account of the negligence of said defendant."

"No. 3. You are instructed that the defendant is not a guarantor or insurer of the purity of the drink prepared by it and placed on the market for sale. It is only bound to use ordinary care and prudence in the preparation of said drinks and in the selection of the materials from which it is made."

The court gave several instructions requested by appellant and several requested by appellee, and these instructions given by the court make it so plain that the plaintiff could not recover unless the preponderance of the evidence showed that the defendant was guilty of negligence, the jury could not have been misled.

They were repeatedly told that they could not find for the plaintiff unless they found from a preponderance of the evidence that the foreign or poisonous substance in the Coca-Cola was put there through, or on account of, the negligent acts of the defendant.

This court has uniformly held that a judgment will not be reversed for a refusal to give an instruction where the matter is fully covered by other instructions.

Appellant calls attention to the case of *Drury* v. *Armour & Co.*, 140 Ark. 371, 216 S. W. 40. We do not think this case supports the contention of appellant. In that case the trial court directed a verdict, and the court held that this was error; that the testimony was sufficient to warrant submission of the question of negligence to the jury.

The instructions in the instant case constituted a correct guide for the jury. There is no contention that the evidence was not sufficient in this case to justify the submission to the jury, and to sustain the verdict.

The judgment is affirmed.