COCA-COLA BOTTLING COMPANY OF ARKANSAS *v*. MASSEY.

4-4487

Opinion delivered January 11, 1937.

*S. Hubert Mayes, Gustave Jones* and *J. Hugh Wharton,* for appellant.

*Howard H. Hasting* and *Richardson & Richardson,* for appellee.

SMITH, J. Appellee alleged and offered testimony sufficient to establish the fact that on December 24, 1934, he purchased a bottle of Coca-Cola from the Smith Brothers Service Station in McCrory, Arkansas, which had been bottled by appellant. There were particles of chipped or broken glass in the bottle, a portion of which appellee swallowed, and he recovered judgment for $4,000 to compensate the injuries thus sustained.

Appellant denied responsibility for the presence of the glass in the bottle, and offered testimony showing the processes employed in bottling the drink. It was shown that before the bottles were filled they were thoroughly cleaned, and each step in filling the bottles was closely supervised and inspected. According to this testimony it would be difficult, if not impossible, for an extraneous or deleterious substance to get into a bottle without being discovered before it was finally placed in the case or box employed in the delivery of the drink to the dealer. But, even so, we have frequently held, as stated in the second headnote to the case of *Coca-Cola Bottling Co.* v. *McBride,* 180 Ark. 193, 20 S. W. (2d) 862, that "The *prima facie* case of negligence arising from proof that a bottle of Coca-Cola contained poisonous matter was not overcome by proof that the most modern machinery was used in cleansing and filling bottles, and that defendant's plan and system was to exercise every precaution in doing so, and to inspect every bottle."

By this, it was meant that such testimony was not conclusive as a matter of law, but that the presumption of negligence arising from proof of the presence of the deleterious matter was not overcome by showing the care usually employed to prevent its presence and to discover it, if it were in a bottle. In other words, the case presented, under the conditions stated, is for the consideration and determination of the jury whether, as a matter of fact, there was extraneous matter in the bottle when sold to the consumer, and, if so, whether it was there when it left the plant of the bottler and its presence had not been discovered through lack of care in

bottling the drink and the inspection of the bottle containing it.

The case was submitted under instructions to which no objection is made, and we have said that the testimony was sufficient to sustain the finding that appellee had made a case for the jury and the judgment must be affirmed upon the question of liability.

It is earnestly insisted that the judgment is excessive, and this is the most serious and difficult question in the case. Appellee's testimony as to the extent of his injury and suffering is somewhat discredited by proof that on September 4, 1932, he recovered judgment for $2,250 in another case against a different defendant, in which it was alleged that he had been totally disabled; and he had filed suit against a railroad company on November 17, 1933, in another county, which was undisposed of at the time of the trial from which this appeal comes, in which he alleged the occurrence of an accident occasioned by the negligence of the railroad company which had totally disabled him. He explained that he had not prepared or read the complaint in either of those cases. However, the question of the extent of his injury from drinking the glass and the proper compensation therefor in damages remained as a question for the jury.

In the case of *St. Louis, I. M. & So. Ry. Co.* v. *McMichael*, 115 Ark. 101, 171 S. W. 115, a judgment for $35,000 was reduced to $25,000, and affirmed for the last-named sum. In so ordering the court, speaking through Mr. Justice Wood, said: "It is the peculiar province of the jury to determine from the evidence what the damages by way of compensation should be. But when the jury has named the amount, it is at last for the courts to say whether this amount exceeds the bounds of reasonable compensation as the law prescribes."

In the discharge of this supervisory duty, we have reached the conclusion that the judgment here appealed from is excessive and should not be permitted to stand in a sum exceeding $1,000, and it will, therefore, be reduced to that amount.

It was shown, and may readily be believed, that swallowing glass is a serious matter, and may be at-

tended by grave, if not fatal, consequences, but not necessarily so. The hazard appears to be the danger of perforating the stomach, with peritonitis resulting. It was shown by the physicians who testified that this happens soon, if at all, but that usually the glass is excreted, and, if not, that it would probably become encapsulized and was afterwards innocuous.

The first physician who treated appellee testified that appellee complained of a pain in his stomach and stated that he had swallowed glass. He complained of diarrhea and vomiting, and witness attributed this condition to the presence of the glass, and stated appellee had gastritis and colitis. The second and last physician who treated appellee found such pains as one would experience who was suffering from chronic appendicitis. A physician who examined appellee on the day of the trial reported appellee to be in normal condition.

There was testimony also as to appellee's decreased capacity to do the manual labor required of a farmer, that being his occupation, but appellee appears to have continued and to be still pursuing that occupation.

Upon a consideration of the testimony in its entirety, we have concluded that a judgment for $1,000 will fully and fairly compensate any pain or other elements of damage occasioned by swallowing the glass, and the judgment will be reduced to that amount, and as thus modified will be affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent from modification.