COCA-COLA BOTTLING COMPANY OF ARKANSAS *v.* RAYMOND.

4-4486

Opinion delivered January 11, 1937.

*S. Hubert Mayes, Gustave Jones* and *J. Hugh Wharton,* for appellant.

*H. U. Williamson* and *Fred M. Pickens,* for appellee.

GRIFFIN SMITH, C. J.  Appellee recovered judgment for $5,000 on an allegation that she drank Coca-Cola bottled by appellant in which were small particles of glass, and that her throat, tongue, digestive, and lower alimentary tract were injured.

Testimony of appellee and other witnesses that the drink was sold by Smith Brothers garage at McCrory is undisputed.  It was stipulated that all Coca-Cola sold by Smith Brothers was manufactured by appellant at its Brinkley plant; that on the day of the injury appellee turned over to the sheriff of White county the bottle from which appellee contends the contaminated liquid was drunk; that the bottle remained in continuous possession of such sheriff until February 6, 1936, at which time

it was delivered to the sheriff of Jackson county, and when so delivered it was in the same condition as when received by the sheriff of White county.

Roy Smith, of Smith Brothers, a witness for appellee, stated on cross-examination that deliveries to the garage were made by truck; that at times four, six, or eight cases were bought; that other soft drinks were procured in the same manner; that, until the bottles were ready for icing, cases were stacked or deposited under the wooden counter, and that competing salesmen who delivered their products jointly utilized the place where Coca-Cola was stored.

It was further testified that the ice box from which deliveries were made to customers was on the outside of the filling station; that the general public had access to it, and at times the Coca-Cola was left in cases on the inside of the building which was also open to the public.

Testimony was offered on behalf of appellant showing the careful manner of manufacturing, bottling, and sealing Coca-Cola, the contention being that the system employed was the approved method used by other standard makers of carbonated beverages.

Appellee testified that prior to receiving the injuries complained of she was quite well and earned from $1.50 a day to $10 per week doing washing; that on January 4, 1935, she was working at home and sent for a bottle of Coca-Cola "because I was tired and thought it would refresh me;" that she opened the bottle, and while drinking discovered that a piece of glass was sticking in her tongue. "I pulled the glass out," said appellee, "and it wasn't but a few minutes until I stopped and my throat was hurting and my mouth began to bleed, and I have had a good deal of trouble ever since with my throat." Appellee says that she suffered pain in her stomach; couldn't eat solid foods; had temperature; lost weight, and "passed blood three or four times a day or so afterwards." Another witness says that appellee vomited, and that glass was in evidence. There was other supporting testimony.

The case was submitted to a jury under proper instructions, and the question of negligence is concluded by the verdict.

In *Coca-Cola Bottling Co.* v. *McBride*, 180 Ark. 193, 20 S. W. (2d) 862, the rule was declared to be that "Proof that the most modern machinery was used in the process of cleansing and refilling the bottles, and that appellant's plan and system was to exercise every precaution in doing so, and to inspect every bottle, was not sufficient alone to meet the burden and overcome the *prima facie* case."

For a reversal appellant urges (1) that the trial court erred in refusing to grant appellant's request for an instructed verdict, and (2) that the verdict is excessive.

We are of the opinion that the evidence warranted submission to the jury, and the court properly refused to direct a verdict.

On the second assignment we agree with appellant. Although appellee shows that she suffered pain and inconvenience, necessitating confinement at home without being able to work for from one to two months, and that she was subsequently partially incapacitated, the full effect of this evidence must be considered in connection with statements made by the physicians.

Dr. Morris says that when he was called by appellee, she gave him a history of having drunk from a bottle of Coca-Cola, and showed him a bottle which had several small particles of glass in it. He took a flashlight and examined her mouth and throat, but did not see any imbedded glass—"just some little lacerated surfaces and bleeding points. I saw signs of where something had been, but I didn't see any glass. Her tongue was not lacerated. I swabbed her throat with mercurochrome and examined the swab afterwards, but did not find any particles of glass. I gave her some morphine to relieve her suffering. She was complaining of her stomach at that time. It was less than an hour after she drank the Coca-Cola, I suspect. * * * The lacerations are apparently healed up. They did bleed a little after that. * * * There are other things that will cause an irritated condition

of the throat, such as colds, tonsils, or laryngitis. She had a cold about a week or ten days ago.''

Dr. Morris further testified that appellee had experienced a good deal of trouble with her stomach. ''I attributed this to drinking the Coca-Cola with glass in it, and diagnosed the complaint as being chronic gastritis. * * * A lot of things might cause chronic gastritis. You might have a foreign body, error of digestion, or gastric ulcer. * * * I don't know what condition her stomach was in prior to that time. * * * I didn't treat her for her stomach. I just came to the conclusion that since she had the irritation that caused her the gastric disturbance, the glass did it. If she had a previous condition of stomach trouble it might alter my opinion. * * * I didn't see her spit the glass out on the towel; that had been there before I got there.''

Dr. G. K. Stephens, a witness for appellant, examined appellee the day of trial. ''I examined her heart, lungs and throat, and had her lie down and palpatate the abdomen. * * * Her temperature was normal. * * * She told me she wasn't bothered with stomach trouble, but had been about nine months ago. I found no indications of any condition that would give her any trouble, in examining her stomach. She still had her tonsils. Her throat is more or less normal. It looks like there might have been a slight catarrhal condition of the throat. From my examination, I am unable to find any condition from which she is suffering that would prevent her from doing normal housework, washing and ironing.''

In October or November, 1935, appellee went to California and remained until the following January. She visited relatives, and ''just sat around the house.'' While there she did not have medical attention. The trip to and from California was made by bus.

This case is very similar to that of *Coca-Cola Bottling Co.* v. *Massey,* post, p. 423, 100 S. W. (2d) 681. In each complaint it is alleged that the beverage was purchased from Smith Brothers service station, and contained glass. Also, Dr. Morris was the principal attending physician and medical witness-in-chief.

When the testimony here is considered in its entirety, we are of the opinion that a judgment for $1,000 is sufficient to compensate appellee for the elements of damages established. The judgment of the circuit court is accordingly reduced, and as thus modified, is affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent as to the reduction of judgment.