Coca-Cola Bottling Company of Arkansas *v*. Langston.

4-5444                                                127 S. W. 2d 263

Opinion delivered April 17, 1939.

*J. Paul Ward* and *John Sherrill*, for appellant.

*Fred M. Pickens*, for appellee.

Baker, J. The appellee is a farmer, living in what was known as Battle Axe neighborhood, in Jackson county. It was alleged that in December of 1937 he drank a

bottle of Coca-Cola, prepared and put up by appellant, and that in this bottle at the time he drank from it there were about two or three teaspoonfuls of finely ground or powdered glass; that after he drank he discovered particles of glass in his mouth, became very much frightened and was taken at once to a physician who examined his mouth and throat and found a roughened and "sandpapered" condition, as described by the physician and that from the small or tiny cuts, or abrasions blood was oozing. The doctor prescribed for him at the time. He had already become much nauseated, was attempting to vomit and continued ill, according to his contention, for many months thereafter.

There was a recovery by the appellee in the sum of $2,500. From the judgment is this appeal.

This case followed the usual course of many others of the same type and character and the same argument is made upon this appeal as has been presented to this court time and again. Unless we were intending to modify or change the rule of decision announced so frequently, it could not be of any value to the parties or to the courts to re-examine or analyze anew the question of the sufficiency of the evidence tending to show negligence or of the effectiveness of the defense pleaded, and the evidence offered in support of it. For that reason it is sufficient to say that we adhere to the decisions of this court, beginning with the case of *Coca-Cola Bottling Company* v. *McBride*, 180 Ark. 193, 20 S. W. 2d 862. Some of the other well considered cases upon the same subject might be read with interest by any one curious to review these authorities. *Coca-Cola Bottling Co.* v. *Bennett*, 184 Ark. 329, 42 S. W. 2d 213; *Coca-Cola Bottling Co.* v. *Jordan*, 186 Ark. 1006, 54 S. W. 2d 403; *Coca-Cola Bottling Co.* v. *Strather*, 192 Ark. 999, 96 S. W. 2d 14; *Coca-Cola Bottling Co.* v. *Raymond*, 193 Ark. 419, 100 S. W. 2d 963; *Coca-Cola Bottling Co.* v. *Massey*, 193 Ark. 423, 100 S. W. 2d 681; *Coca-Cola Bottling Co.* v. *Morrison*, 194 Ark. 248, 106 S. W. 2d 601.

The appellant urges that the court erred in failing to give an instruction requested by the Coca-Cola Bot-

tling Company, the effect of which we prefer to state rather than copy. This instruction told the jury, had it been given, that the bottling company was not required to guarantee or insure the plaintiff against glass in Coca-Cola sold to him. It only required the use of ordinary care in the selection of materials used in the preparation and bottling of the said drink and inspecting the same, that if it did this, there was no liability regardless of the condition in which the plaintiff may have found the drink at the time he bought it. While this instruction is, at least, somewhat contradictory of the doctrine that we have heretofore announced or that has been constantly followed throughout the years, we suggest that every phase of this particular instruction that might properly be given was covered by other instructions. The court, in several instructions, was careful to state to the jury, it seems with some degree of emphasis, that there was no liability unless there was negligence on the part of the bottling company in the preparation, manufacture, or putting up of this drink which it sold. Not only did the court make it clear that recovery could be had only by reason of the negligence, but the trial court further advised the jury that whatever presumption of negligence might appear from any stated condition, that presumption might be overcome or be met by proof.

We think it sufficient to say that every phase of instruction No. 2, refused by the court, as offered by the appellant, which the appellant was entitled to have given to the jury, was fully covered by the instructions given, and there was consequently no error. *American Equitable Ins. Co.* v. *Showers,* 195 Ark. 521, 113 S. W. 2d 91.

It was also urged that the court erred in not permitting one of the physicians, who testified for the appellant, to verify his assertions that the mere intaking or swallowing of glass was not dangerous and who offered, as a part of his evidence, to take from this particular bottle a spoonful of the glass in the bottle and swallow it in the presence of the jury. It was strongly urged that it was error on the part of the court not to permit this demonstration. We do not think so. It may be said that, perhaps, no particular substance, medicine or poison,

would affect two people exactly alike. It is possibly true
that the tiny cuts or scratches made by the glass in the
man's throat did not amount to very much. The theory
may be true that after it was taken into the stomach
it became mixed there with the food and other matter
there contained so that it did not do the damage that or-
dinarily laymen might expect.

On the other hand, we must recognize the principle
that one who takes into his mouth some matter which
he thinks is deleterious, injurious, poisonous, there may
be ensuing fright, there may be great mental and conse-
quent physical suffering. Common or ordinary experi-
ence and observation among laymen, or people gen-
erally is to the effect that consequent nausea is so great
and long continued as to produce extreme anguish
and bodily distress. Whatever may be the psychic equa-
tion of this condition matters little until the patient may
have had time for proper treatment and assurances to
have restored natural balances and adjustments. It is
possible that doctors or other experts might define this
condition as largely psychic. However that might be, if
the effect is such as to impair bodily functions, as to turn
a man who was ordinarily healthy into a practical invalid
for a time, then those who are to blame for the condition
that brings about this impaired state of health must be
held responsible therefor when such facts are established
according to proper legal procedure. It may be that the
doctor could have taken into his mouth a teaspoonful of
the glass and swallowed the same without any kind of
damage or injury, apparent then to the jury or the court.
No evil consequences might have followed later, but even
if that had been done, it would have been no more con-
vincing of the rights of the parties involved in this liti-
gation than it would have been had a professional glass
eater appeared before the court and jury and put on his
show.

We are inclined to regard people who have litigation,
nothing to the contrary appearing, as ordinary human be-
ings, affected as ordinary men and women are under the
same or similar conditions; that if the conditions are suf-
ficient to cause fright or distress, added to injury, or im-

paired functional conditions, so as to bring on suffering and impaired health, then such ordinary people must be the objects of solicitude, rather than exceptions that might be pointed to as glass eaters, or those who might not have any squeamishness about swallowing flies, bugs, or spiders, or the modern collegiate who gulps live goldfish or lizards, or otherwise demonstrates gymnastic or freakish gormandizing.

We think, therefore, there was no error in the court's action denying the appellant the coveted privilege to show that one of the physicians was willing to eat some glass in the presence of the court and jury.

The only other matter of any importance brought forward by the motion for new trial, and arguments set forth in the briefs, is the extent of the injuries received and the consequent amount of recovery. It may be said that it is hardly contended in this case that the appellee was permanently injured. It was insisted at the time of the trial he had not fully recovered. The doctors who testified, it seemed, were in practical accord or agreement that his illness would not continue for a great length of time. None was willing to assert positively, from study or experience that all his troubles were attributable to the fact that he had been so unfortunate as to swallow the glass. Even the doctor who had seen the patient frequently and made close observations of conditions did not state categorically that appellee's condition was connected with or attributable entirely to that misfortune. The appellee, however, has not suffered any extremely great loss, except his pain and suffering and that appears from the record made. He is a farmer and he shows himself that there was no great loss in what he would have earned or produced. The evidence supports a finding of pain and suffering continued over a considerable period, but not so serious as might be deemed sufficient to warrant an extraordinarily large recovery. There have been several cases very similar to this one. They control in this matter. *Coca-Cola Bottling Co.* v. *Raymond, supra; Coca-Cola Bottling Co.* v. *Massey, supra; Coca-Cola Bottling Co.* v. *Morrison,*

*supra; Coca-Cola Bottling Co.* v. *Eudy,* 193 Ark. 436, 100 S. W. 2d 683.

In the foregoing cases, conditions were not seriously at variance with the facts in the instant case. The greatest recovery that we have found warranted in any of those cases was for $1,000. The amounts above that sum we have held to be highly speculative and not supported by substantial evidence. We think it true in the instant case that the recovery is excessive. We hold plaintiff is entitled to receive not exceeding $1,000. If within fifteen days plaintiff will enter a remittitur of $1,500, the judgment for the remaining $1,000, will be affirmed, otherwise the cause will be remanded for a new trial.

HUMPHREYS and MEHAFFY, JJ., dissent from the order reducing the judgment.