THE KROGER COMPANY *v.* PHYLLIS R. BECK

[No. 3-1276A299. Filed April 25, 1978.]

*R. Kent Rowe, Paul M. Oleniczak, Rowe, Sweeney, Butler, Simeri & Laderer,* of South Bend, for appellant.

*Kenneth P. Fedder, John B. Ramming, Voor, Jackson, McMichael, Allen, Fedder & Herendeen,* of South Bend, for appellee.

STATON, J. — Phyllis Beck sued The Kroger Company in the St. Joseph Superior Court, Small Claims Division; Beck recovered $2700. Kroger appeals. Two issues are before us:

(1)   Was there sufficient evidence of a contemporaneous physical injury to support the trial court's award of damages for mental anguish?

(2)   Was $2700 an excessive damage award for mental anguish and suffering?

We have reviewed the record, and we find that the judgment of the trial court is supported by the evidence. We affirm.

## I.

### Injury

Phyllis Beck purchased a sirloin steak for her family at a Kroger grocery store on October 31, 1976. The steak had been pre-packaged by Kroger for its customers. Later the same day, she prepared the steak for dinner by cutting it into portions and broiling it. After serving the steak to her family for dinner, Phyllis Beck felt a sharp pain in the back of her throat when she placed the second bite of the steak into her mouth. She yanked the piece of steak from her mouth, ran into the bathroom, and vomited violently. In the steak, she found an inch-long piece of metal which was the tip end of a large hypodermic needle used for injecting animals. This sharp end of the hypodermic needle had punctured her throat.

Phyllis Beck testified at trial that she could not swear that she bled as a result of the puncture because of the location of the wound (soft palate at the back of the throat) and the vomiting. She did not go to a doctor, but rather administered first aid to herself for a month by gargling with Listerine. Although her mouth has healed and she does not have a scar, she is afraid that such an incident will reoccur. She further testified that she has not been able to enjoy eating steak or any other kind of meat since.

Her husband was present when she was injured by the needle. He told the court that at one point during dinner his wife screamed and went into the bathroom and vomited. She showed him the needle which she had removed from her mouth. He testified that after the incident "having meat or not having meat" was "a bone of contention." The incident "took, quite frankly, the fun out of eating for some time. . . ."

## II.

### Contemporaneous Physical Injury

Kroger argues, on appeal, that Beck failed to show any contemporaneous physical injury which would justify an award for the psychological injury. Kroger suggests that the "pricking" of Phyllis Beck's throat did not constitute an appreciable physical injury. Kroger maintains that the psychological injury she claims is only related to a fear of what might have happened had the needle been swallowed and was not directly related to the contemporaneous physical "pricking."

Phyllis Beck's complaint alleged "great bodily harm and mental anguish." The only witnesses at trial were Phyllis Beck and her husband, and their testimony was uncontradicted: Phyllis Beck experienced and evidenced pain, yanked the piece of animal hypodermic and steak from her mouth, vomited, and has not enjoyed meat since the incident. She stated explicitly many times, "It [her throat] was punctured." The inference drawn by the trier of fact was that she was injured as a proximate result of her contact with the needle in the steak which had been purchased from Kroger. That inference, from the uncontradicted evidence, must prevail. *Haynes v. Brown* (1949), 120 Ind. App. 184, 88 N.E.2d 795. We will look only to the evidence and reasonable inferences to be drawn therefrom which support the judgment. *Wilson v. Jerry Miller, Inc.* (1973), 157 Ind. App. 135, 299 N.E.2d 177.

Kroger characterizes her injury as a "prick" followed by an unconnected fear. This framing of the factual basis of the complaint is not even remotely supported by the evidence. Moreover, Kroger's attempt to show that her fear of eating meat was not related to the "prick" of the needle presupposes that a contem-

poraneous physical injury (which was uncontradicted, in that a "prick" is an injury) must be permanent or substantial to spawn mental distress. A cursory review of mental anguish decisions shows that permanent or substantial physical injury is not required and has not been required by the law.[1]

*Coca-Cola Bottling Co. of Arkansas v. Langston* (1939), 198 Ark. 59, 127 S.W.2d 263, concerned a man who drank a beverage in which he found two or three teaspoonfuls of finely ground or powdered glass. He discovered particles of glass in his mouth and became frightened.

---

1. In *Clark Restaurant Co. v. Rau* (1931), 41 Ohio App. 23, 179 N.E. 196, a man swallowed some glass which scratched the walls of his stomach; he suffered pain and mental distress. The court held that "[i]f as a proximate result of such negligence . . . [plaintiff] swallowed particles of glass contained in the food, this fact in itself establishes an injury even though there be no other injury." *Id.* at 197. In *Duley v. Coca-Cola Bottling Co. of St. Louis, Mo.* (1950), 232 S.W.2d 801, the plaintiff noticed an odd taste in her coke. She poured out the contents and found a rusty safety pin and some debris; she became violently nauseated, suffered severe retching, continuous vomiting, and severe pain and mental anguish. She had no medical treatment, but testified that it was a week before she could enjoy her meals. The court allowed recovery, holding that a "common sense inference could be drawn by the jury that plaintiff become sick and nauseated and was thereby injured, even though not seriously, as the direct result of drinking the Coca-Cola in question." *Id.* at 806. (Later, the same Missouri court held that where there is no evidence of odd taste at the time of consumption *or* an inherently dangerous content like a sharp pin or glass, *Duley's* cause-and-effect language would not be followed. *See Williams v. Coca-Cola Bottling Company* [1955], 285 S.W.2d 53.)

In allowing recovery for mental distress, the courts have uniformly stated that there must be a contemporaneous physical injury which can serve as a predicate to recovery for the ensuing fright, apprehension, and mental anguish suffered. *See Tuttle v. Meyer Dairy Products Co.* (1956), 75 Ohio App. 587, 138 N.E.2d 429. In *Meyer* there was no recovery because the plaintiff "expelled said glass [which had been in cottage cheese] from her mouth *without being cut or scratched thereby.* . . ." (Emphasis added.) But, there is no requirement that the injury be severe to support the parasitic mental anguish claim. A causal connection is all that is mandated. *E.g., Hamilton Corporation v. O'Neill* (D.C. Cir. 1959), 273 F.2d 89; *Ward Baking Co. v. Trizzino* (1928), 27 Ohio App. 475, 161 N.E. 557; *Miller v. Meadville Food Service* (1953), 173 Pa. 357, 98 A.2d 452. In *Miller*, the plaintiff bit something hard in some pineapple pie; in her excitement she coughed, strangled, and ultimately swallowed the hard substance. The court held that there is no necessity to identify the foreign object.

The contemporaneous physical injury rule is not restricted to food cases. *See Greenburg v. Stanley* (1958), 51 N.J.Super. 90, 143 A.2d 588. A mother and child were injured in an auto accident. The mother recovered for the psychological trauma of seeing the death of her child when that trauma was accompanied by her own contemporaneous physical injury. In *Homans v. Boston Elevated Ry. Co.* (1902), 180 Mass. 456, 62 N.E. 737, Justice Holmes stated that when there is a battery, however slight, accompanied by nervous shock, the plaintiff may recover for the shock as well as the battery.

Examination revealed that his mouth was roughened, cut, and bleeding. The court, in allowing a recovery of $1000, stated that "[i]t is possibly true that the tiny cuts or scratches made by the glass in the man's throat did not amount to very much." But, the court added, "we must recognize the principle that one who takes into his mouth some matter which he thinks is deleterious, injurious, poisonous, that there may be ensuing fright, there may be great mental and consequent physical suffering." 127 S.W.2d at 264. Phyllis Beck's testimony detailed physical injury, month-long pain, nausea, vomiting, fright, and loss of ability to eat meat.

Another case, *Morton v. Stack* (1930), 122 Ohio St. 115, 170 N.E. 869, illustrates that the type of initial injury is not important. In *Morton v. Stack, supra,* a child was trapped in a room with no outside fire escape. The child was forced to inhale smoke for about fifteen minutes before being rescued. Although the initial injury was not severe, for some weeks the child was nervous, shook, cried out in her sleep, and one and one-half years later experienced convulsions. The court determined that the absence of the fire escape was the proximate cause of the smoke inhalation which resulted in the mental anguish. Phyllis Beck's injury, a puncture in her throat, was certainly as appreciable as the child's smoke inhalation. We conclude that Beck's inability to demonstrate permanent physical impairment is not fatal to her claim.

> Once it has been shown that injury occurred, it is for the trier of fact to determine whether that injury was the catalyst producing the mental distress.[2]

---

2. *Cf., Monteleone v. Co-Operative Transit Co.* (1945), 128 W.Va. 340, 36 S.E.2d 475. The court found that there was no causal connection established between a cut on the cheek and the severe anguish suffered, but had there been a link made, the $5000 damages awarded would have been "well within bounds." *Id.* at 481.

In *Ferrara v. Galluchio* (1958), 5 N.Y.2d 16, 152 N.E.2d 249, a plaintiff recovered in a medical malpractice action for additional mental distress caused by a warning to the patient to get periodic checkups. The plaintiff's fear of cancer was held compensable because it was an outgrowth of the original negligence. The patient recovered $15,000, and the court held that each negligence case must be solved "pragmatically." "Liability for damages caused by the wrong ceases at a point dictated by public policy or common sense." *Id.* at 253.

It has been held that no medical proof or chemical analysis is necessary to establish the causal relationship. *See Wilson v. Coca-Cola Bottling Co.* (1949), 3 N.J. Super. 102,

Kroger does not dispute the fact that Beck was at least "pricked" by the extremely sharp tip of an animal hypodermic as she was chewing a piece of steak from its store. Kroger does not argue that the hypodermic needle was not dangerous or would not cause pain in a normal person.[3] As a Mississippi Supreme Court succinctly stated, "Anything taken into the mouth there to be masticated should be free of those elements which may endanger the life or health of the user." *Pillars v. R.J. Reynolds Tobacco Co.*, (1918), 117 Miss. 490, 78 So. 365, 366.[4] Kroger does not maintain that a sharp object in a steak which "pricks" the throat and causes vomiting could not engender emotional distress. Phyllis Beck's testimony was unrefuted, and it established the legally required injury as well as the causal connection. The trial

---

65 A.2d 630. Nor are witnesses necessary. *See* S. MOSS, *Food Products Liability*, 1950 INS. L. J. 419.

Courts have been willing to examine all of the consequences of the initial injury. Miscarriage cases are common; the plaintiff suffers an injury, experiences mental distress, and the miscarriage results from the mental distress. There need not be established a direct link between the physical injury and the miscarriage. *Kroger Grocery & Baking Co. v. Schneider* (1933), 249 Ky. 261, 60 S.W.2d 594 (plaintiff bit into bread, and wire penetrated her palate and gum; miscarried the following morning due to fright). In *Gannon v. S.S. Kresge Co.* (1931), 114 Conn. 36, 157 A. 541, the plaintiff discovered glass in a sandwich in January. Particles of glass entered her mouth and throat. She became nervous and hysterical. In March, she became pregnant; she miscarried in July. The court found that the glass could have caused the anxiety which triggered the miscarriage.

Even when the fear seems out of proportion to the reality of the situation, but the fear, though irrational, is shown to be connected to the accident, recovery is allowed. *Murray v. Lawson* (1969), Ky, 441 S.W.2d 136.

3. *See Coca-Cola Bottling Co. of Arkansas v. Langston* (1939), 198 Ark. 59, 127 S.W.2d 263, in which the court refused to allow a physician to demonstrate that swallowing glass slivers is safe and thus negate any distress damage caused by fear of what might happen. Ordinary people involved in this type of litigation "must be the objects of solicitude, rather than exceptions that might be pointed to as glass eaters, or those who might not have any squeamishness about swallowing flies, bugs, or spiders, or the modern collegiate who gulps live goldfish or lizards, or otherwise demonstrates gymnastic or freakish gormandizing."

4. Pillars found a human toe, "with flesh and nail intact," in a slug of chewing tobacco; he evidenced symtoms of ptomaine poisoning. Holding that the tobacco company was negligent, the court stated, "We can imagine no reason why, with ordinary care, human toes could not be left out of chewing tobacco, and if toes are found in chewing tobacco, it seems to us that somebody has been very careless." *Pillars v. R.J. Reynolds Tobacco Co.* (1918), 117 Miss. 490, 78 So. 365, 366. Likewise, we can see no reason why an animal hypodermic should be left in a sirloin steak.

court did not commit error when it considered mental distress which had been based on an uncontroverted contemporaneous physical injury.[5]

### III.

### Damages

Kroger asserts that even if damages for mental distress were proper, $2700 is an excessive amount in that Phyllis Beck did not offer specific evidence supporting that amount. A damage judgment will only be reversed by this Court after we have examined the evidence concerning the injuries, and it is apparent that the amount of damages assessed by the fact-finder is so small or so great as to indicate that the fact-finder was motivated by prejudice, passion, partiality, corruption, or considered some improper element. *Wynder v. Lonergan* (1972), 153 Ind. App. 92, 286 N.E.2d 413; *Rondinelli v. Bowden* (1973), 155 Ind. App. 582, 293 N.E.2d 812. On appeal, uncertainty as to the exact amount of damages is resolved against the wrongdoer. *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind. App. 315, 357 N.E.2d 247.

We cannot ignore the fact that Kroger offered no evidence at trial whatsoever.[6] Phyllis Beck testified to the initial injury, the vomiting, the fear, and the continuing inability to eat meat. She did not introduce expert medical testimony, but such testimony is not crucial to the establishment of her injury.[7] The owner of a

---

5. The contemporaneous physical injury analysis has been generally accepted as the proper test for mental anguish liability. We would note that an interest analysis may be more rationally sound. "[A]pprehension or fear of bodily harm is as much an invasion of this interest [bodily security] as is illness or other actual harm to the physical being." F. HARPER and M. McNEELY, *A Re-examination of the Basis for Liability for Emotional Distress*, 1938 WIS. L. REV. 426, 427. The interest analysis would obviate the need to strain to find a physical injury to allow recovery for the emotional effects of negligence.

We do recognize that the need for a contemporaneous physical injury was rooted in the judiciary's desire to distinguish between real and fraudulent claims. Whether this laudable purpose should prevent injured plaintiffs from recovery does concern us. However, Beck has demonstrated the contemporaneous physical injury which is traditionally required.

6. *See Murray v. Lawson* (1969), Ky., 441 S.W.2d 136.

7. In *Delta Nehi Bottling Co. v. Lucas* (1939), 184 Miss. 693, 185 So. 561, the Mississippi Supreme Court pointed out that a jury would know, without a physician to tell them,

car may testify to the amount of damages suffered, *Charlie Stuart Oldsmobile, Inc. v. Smith, supra*; we see no reason to disallow pain and suffering damages just because the victim is the only witness who personally experienced the pain and suffering. In *Medeiros v. Coca-Cola Bottling Co. of Turlock, Limited* (1943), 57 Cal.App.2d 707, 135 P.2d 676, the plaintiff found a cleaning brush in his beverage. The court stated,

> "We think that a court may well take judicial notice that even a normal person in seeing a disgusting looking object in a bottle from which he has just drunk may and often will suffer intense nausea which may produce more serious results. Also one may recover for injury resulting from mental shock in such cases."

135 P.2d at 680. *Medeiros* recovered $7500.00.

Phyllis Beck's husband corroborated her account of what happened when she encountered the needle. The anxiety that she experienced was manifested immediately. She stated that she came back from the bathroom and "pulled everything off the table and was worried that someone else possibly might have had another part of maybe the same thing in their meat." She has had nightmares about the incident. Her husband testified that after the occurrence his wife "wasn't in the state of mind that she wanted to [prepare meat]." The trial judge specifically held that he did not consider the mental anguish to be "unreasonable." He stated, "I think we have substantial enough injury." After deciding the issue of liability, the judge considered the damages for a couple of days before awarding the $2700.

We find that the $2700 damages are not unreasonable in light of the evidence.

> "When there is evidence of any injury, no matter how slight, the mental anguish suffered by the plaintiff becomes an important element in estimating the damages sustained."

*Clark Restaurant Co. v. Rau* (1931), 41 Ohio App. 23, 179 N.E. 196, 197.

> "Mental suffering is no more difficult to estimate in financial terms, and no less a real injury than 'physical' pain; it is not an independent intervening cause, but a thing brought about by the defendant's negligence itself, and its consequences follow in unbroken sequence from that negligence; . . ." (Footnotes omitted.)

PROSSER, LAW OF TORTS 327-328.

A fact-finder has the right to consider the mental suffering caused by the anxiety and fear of the ensuing consequences.[8] Phyllis Beck stated, "It lodge up there kind of almost—it almost gagged me. And for a few seconds, which seemed like hours to me, I thought I was going to choke to death. And this is why I vomited." Where realization of the physical effects which *can* be produced by the foreign object *did* produce the total emotional and physical result, recovery is allowed even if there is no showing that the fatal or deleterious consequence resulted in the particular case.[9]

Phyllis Beck's fear of eating meat was also worthy of consideration by the court. She testified that meat had been a staple in her family's diet. She averred that she was on a high protein diet and that meat as a source of protein and as a pleasure had been taken from her. We believe that her loss should be compensable.[10]

---

that a normal person would sometimes become nauseated and experience an upset stomach when seeing in plain view a nauseating or disgusting object in a container from which he had unsuspectingly drunk or eaten. Here, the trial judge, upon seeing and feeling the inch-long hypodermic tip, and hearing Beck's testimony, would know, without medical proof, that the experience could reasonably have caused pain and consequent mental anguish. *See, e.g., Wilson v. Coca-Cola Bottling Co.* (1949), 3 N.J.S. 102, 65 A.2d 630.

8.  *Ward Baking Co. v. Trizzino, supra.*

9.  See A. BRODY, *Negligently Inflicted Psychic Injuries: A Return to Reason,* 7 VILLANOVA L. REV. 232, 252 (1961-62).

10.  The question of liability and damages for the loss of future enjoyment in food has not been specifically addressed in Indiana. In fact, we have failed to discover a single case in any jurisdiction which is directly on point. The Oklahoma Supreme Court, in *Cushing Coca-Cola Bottling Co. v. Francis* (1952), 206 Okla. 553, 245 P.2d 84, was faced with the allegation that the plaintiff developed a phobia for all types of soft drinks dispensed in bottles following an episode in which he discovered a partially decomposed mouse in his coca-cola. The plaintiff testified that although the coke had not tasted right and he had not finished it, he did not throw up immediately. It was later that he discovered the mouse, became nauseated, and vomited. The court reversed a jury verdict of $1650 on the ground that the plaintiff had failed to establish, through medical or lay testimony, that any physical injury resulted from the drinking of the contents of the bottle. His nausea stemmed exclusively from his mental reaction. The court then stated:

"An entirely different question would have been presented, had the plaintiff become nauseated and vomited as a result of the taste or toxic effect of the contaminated drink and had the mental condition been a result of or connected with the physical

Examining the damages awarded in light of the elements that the trial court could properly have considered, we conclude that $2700 is certainly not so great as to indicate a motivation of prejudice, passion, partiality, or corruption. *Chicago South Shore & South Bend Railroad v. Brown* (1974), 162 Ind. App. 493, 320 N.E.2d 809. Furthermore, Kroger has given no hint, at trial or on appeal, of what proper damages should have been. We resolve any doubt in favor of Phyllis Beck. *Charlie Stuart Oldsmobile, Inc. v. Smith, supra.* The judgment awarding $2700 damages is affirmed.

Garrard, P.J. and Lowdermilk, J. (by designation), Concur.

NOTE—Reported at 375 N.E.2d 640.

reaction. . . . The 'phobia' about which he testified had no foundation on or connection with physical injury."

*Id.* at 86.

We are faced with that different question since Phyllis Beck's mental anguish stemmed from the initial puncture wound. And, we hold that Phyllis Beck's lay testimony of the physical and emotional injury was a sufficient basis upon which to award relief. A phobia against eating meat was shown by the evidence.