## Louisville & Nashville Railroad Company v. Roberts.

### (Decided February 13, 1925.)

### Appeal from Letcher Circuit Court.

1. Damages—No Recovery for Physical Injuries Due to Fright without Impact Permitted.—No recovery for physical injuries due to fright without impact is permitted.

2. Damages—Truth of Testimony Whether Railroad's Workmen Violently Shook and Jarred House Cars Held for Jury.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and husband of their box car quarters by connecting up dead track on which they were located and moving them away, truth of testimony whether railroad's workmen tore off porches on such cars, jacked them up, cut rails, and violently shook and jarred cars, or whether such cars were not jarred or shaken in the slightest, held for jury.

3. Damages—Amended Petition in Action for Injuries Held to Aver Physical Impact.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and husband of their box car quarters by connecting up dead track on which they were located and moving them away, amended petition that railroad's workmen with gross negligence moved plaintiff in cars, which, together with facts as stated in petition and amended petition, caused plaintiff to become sick, etc., held to aver a physical impact to plaintiff.

4. Damages—Whether there was Physical Impact, Causing Injury to Plaintiff when Railroad Moved Box House Cars, Held for Jury.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and hus-

band of their box car quarters by connecting up dead track on which they were located and moving them away, whether there was physical impact to plaintiff causing injury by moving of such cars held for jury.

5. Damages—Railroad Responsible for Plaintiff's Miscarriage where Impact and Fright Coincident in Point of Time.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and husband of their box car quarters by connecting up dead track on which they were located and moving them away, in which impact and fright were coincident in point of time, railroad was responsible for miscarriage as if it had occurred from impact alone, although miscarriage might not have resulted from impact without the fright.

6. Appeal and Error—Proof of Service on Railroad of Notice Not to Attempt to Dispossess Plaintiff's Husband and Other Employees Held Not Prejudicial.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and husband of their box car quarters, proof of service of notice on railroad, warning it not to attempt to dispossess plaintiff's husband and other employees, was not prejudicial, though nothing was said in notice about plaintiff's condition, where railroad knew all about her condition.

7. Appeal and Error—Admission of Testimony that Current Month's Rent on Plaintiff's Box Car Quarters had been Paid Held Not Prejudicial.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and husband of their box car quarters, admission of plaintiff's testimony that current month's rent on their living quarters had been paid was not prejudicial as being hearsay, since it was immaterial.

8. Railroads—Railroad Required to Exercise Ordinary Care as to Trespasser.—In action for fright and subsequent miscarriage sustained by plaintiff when railroad attempted to dispossess herself and husband of their box car quarters, though plaintiff was a trespasser yet, as railroad knew of her condition and perils in carrying out its plans, it was required to exercise ordinary care to prevent injury.

FIELDS, DAY & FIELDS, MORGAN & HARVIE and WOODWARD & WARFIELD for appellant.

FRENCH HAWK and R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This case involves the application of the principles governing those cases of injuries that result from fright accompanied and unaccompanied by physical impact.

The origin of the doctrine denying recovery for physical injuries due to fright without impact occurred almost simultaneously in England and America. Victorian Railways Commissioners v. Coultas, 13 A. C. 222 (1888); Lehman v. Brooklyn City R. R. Co., 47 Hun. (N. Y. 1888) 355. These cases seem to have been rested in the main upon the proposition that no precedents were found to sustain such action. The Coultas case, after being questioned in Pugh v. London, etc., Ry. Co. (1896), 2 Q. B. 248; Wilkinson v. Downton (1897), 2 Q. B. 57, was finally repudiated in the case of Dulieu v. White & Sons (1901), 2 K. B. 669, and the doctrine is now established in England that there may be recovery for physical injuries resulting from nervous shock without impact.

In America, however, and in this state the rule laid down by the Lehman case *supra* has become the established doctrine. Ewing v. Pittsburg, etc., R. Co., 147 Pa. St. 40; Mitchell v. Rochester Ry. Co., 151 N. Y. 107; Spade v. Lynn and Boston R. Co., 168 Mass. 285; Kentucky Traction and Terminal Co. v. Bain, 161 Ky. 44; 170 S. W. 499; Smith v. Gowdy, 196 Ky. 281, 244 S. W. 678; McGee v. Vanover, 148 Ky. 737, 147 S. W. 742. *Contra*, Lindley v. Knowlton, 179 Cal. 298; Watson v. Dilts, 116 Iowa 249; Purcell v. St. Paul City R. Co., 48 Minn. 134; Mack v. South-Bound R. Co., 52 S. C. 323; Pankopf v. Hinkley, 141 Wis. 146.

The reasons usually assigned for the denial of recovery in this class of cases are that the damages resulting from the fright are too remote; that fright caused by negligence, not being itself a cause of action, none of its consequences can give a cause of action; and that to open the courts to this character of case would tend to promote fraud and the presentation of claims for injuries beyond the capacity of juries properly to assess. The criticism of these reasons on logical grounds and the answer to that criticism is probably best expressed by Justice Holmes of the supreme bench, when Chief Justice of Massachusetts, in the case of Smith v. Postal Tel. Cable Co., 174 Mass. 576, where he said that the refusal to grant relief in this character of cases "is not put as a logical deduction from the general principles of liability in tort, but as a limitation of those principles upon purely practical grounds."

This being true, the courts have not been inclined to extend the rule beyond its self-contained limitations,

and so these cases hold that, if there is an impact and fright coincident in point of time, recovery is allowed for the resulting shock and physical injuries, without inquiry as to whether the shock was caused by the concurrence of fright and impact, or by fright alone; the idea being that the impact removes the difficulty of proving the tort and damage that would otherwise present itself in the absence of impact. Thus in the case of McGee v. Vanover, *supra,* a leading case in this jurisdiction on the subject, the facts were that Mrs. Nancy Vanover brought suit against one McGee and one Evans in which she proved that McGee and Evans in her presence had assaulted her husband, and that, while engaged in the assault, Evans in order to reach her husband had pushed her to one side. McGee in the assault did not touch Mrs. Vanover. It was further shown that at this time Mrs. Vanover was *enceinte,* that she was much frightened by the assault, that immediately thereafter she became ill and later suffered a miscarriage. The court denied recovery against McGee, as there was no physical impact proved as to him, but sustained a recovery against Evans, which included compensation for the miscarriage. This court said:

"In our view of the case, the striking or pushing of the wife by Evans, whether intentional or otherwise, that he might get to and make an attack upon her husband, furnished the physical impact essential to her right of action; and if such physical impact alone, or together with his wrongful acts complained of, caused, in whole or in part, the fright and other injuries sustained by appellee, she was entitled to have the case go to the jury as to him. . . . If the violence done her person by the appellant Evans, and the fright resulting to her therefrom, as well as his other acts in that connection, caused the miscarriage, the miscarriage was but one of the injuries resulting from his wrongful acts, and any physical or mental suffering she may have endured from the miscarriage, or independently thereof, as the result of his wrongful acts, should have been considered by the jury in fixing the amount of the appellee's damages."

With these principles in mind, the present case is easy of solution. It appears that the husband of the appellee for some time prior to July 24, 1922, had been an

employee of the appellant at Neon, Kentucky. For living quarters, it had furnished him with two box cars located on a dead track, which is a siding disconnected from the main line of the railroad. These box cars had been fitted up with doors and windows and even had a little back porch nailed to them. For the use of these cars appellee's husband paid the appellant rent. In the early part of July, 1922, there was a nation-wide strike by the employees of the railroads and in this strike the appellee's husband "went out." The appellant then promptly gave notice to appellee's husband and its other employees who occupied like house cars to vacate the premises. At this time, appellee was *enceinte* and expected the birth of her child in about a month's time. The appellee and her husband not vacating the property, the appellant, without resorting to the proper processes of law to dispossess them, undertook to accomplish this purpose itself and to that end laid plans to connect up the dead track, on which the cars in which appellee lived were located, to the main track in order to haul the cars away. There can be no question whatever but that just prior to its efforts to carry out these plans, appellant knew of the condition of appellee and the probable danger to her of the execution of these plans. Appellant's witness, M. F. Hall, testified that as early as July 2, 1922, he knew that appellee was pregnant, that her condition was manifest to anybody who looked at her, that about July 18th or 19th he conferred with one P. F. Keisheimer, appellant's assistant train-master and under whose directions the work of connecting up the tracks was done, about Mrs. Roberts' condition, and that Keisheimer said it was a case that was not very easy to handle and that he would get legal advice as to what to do. The testimony shows that on the 24th of July, appellant's workmen unloaded by appellee's cars a lot of crossties and rails and proceeded to connect up at least one end of this dead track with the main line. Appellee's witnesses testified that at this time appellant's workmen were heavily armed and were accompanied by guards likewise armed. Appellant does not deny this in its evidence. In just what fashion the work of connecting up the tracks was done, is in dispute. The appellee's witnesses depose that appellant's workmen tore off the back porches above mentioned, jacked up the box cars, cut rails and violently shook and jarred the cars in which appellee was located as appellant's workmen knew. Appellant's witnesses,

however, testify that the box cars were not touched and neither jarred nor shook in the slightest. Of course it was for the jury to say which one of these stories it believed. The appellee further testifies that the prizing and the shaking and jarring of the cars in which she was, continued until she could stand it no longer and had to go to bed; and that this shaking and jarring shook her up and caused her very severe pain in her back. A physician was immediately summoned and on his arrival he found her in a highly nervous condition, whereupon he gave notice to appellant that it must cease its work about these cars, which notice appellant obeyed. Thereafter as a result of the nervous shock thus sustained, appellee suffered a miscarriage, and in her suit against appellant for the wrongs which she claims she sustained, as thus detailed, she recovered a verdict of $5,000.00, to reverse which this appeal is prosecuted.

It is first insisted that the petition as twice amended did not state a cause of action in that it failed to aver the essential element of physical impact within the requirement of the rules above discussed. In this counsel is in error, for the second amended petition towards its close specifically avers that appellant's workmen "did with gross negligence and carelessness shake and move the plaintiff in the cars, which, coupled with the facts as stated in the petition and amended petition, caused the plaintiff to become sick, etc." As well said in the case of Kentucky Traction and Terminal Company v. Bain, *supra*: "By a violent jolt or jar a physical injury may be done, though the flesh is not bruised, and there may be little externally to indicate it."

It is next insisted that a peremptory instruction for appellant should have been given, because, first, there was no evidence of any physical impact; secondly, that the miscarriage was the result of fright alone; and thirdly, that the evidence is too vague to determine whether or not the miscarriage was due to fright alone or to the physical impact, if any. That there was evidence of physical impact we have shown above in our summary of appellee's own testimony. "A jolt or jar is a physical injury though the flesh be not bruised." As to the second and third reasons assigned for the peremptory, the appellee's testimony shows that the impact and fright were coincident in point of time. As the appellant's workmen prized and shook the cars, she was jolted and jarred and at the same time became highly nervous

and excited to such an extent that a doctor had to be called. Under the *ratio decidendi* of the Vanover case, if the impact and the fright concur, the injured party may recover for the damages flowing from the fright. Therefore, in the case at bar, although the miscarriage might not have resulted from the impact without the fright, yet the two concurring as here, the appellant is as much responsible for the miscarriage as if it had occurred from the impact alone. Hence the trial court properly overruled the motion for a peremptory instruction.

It is next complained that much incompetent testimony was admitted over appellant's objection. The first error urged in this connection is that the court should not have permitted appellee to prove the serving upon appellant of a notice warning appellant not to attempt to dispossess appellee's husband and other employees. We do not regard the admission of this notice as prejudicial because, although nothing was said in this notice about the condition of appellee, yet as we have shown, appellant well knew three or four days prior to the 24th day of July all about her condition and the danger of its proposed action.

It is next contended that appellee should not have been permitted to testify that the current month's rent for the house cars had been paid as her knowledge on this point was based on pure hearsay. We regard this too as immaterial and hence not prejudicial. Conceding, *arguendo,* that appellee was a trespasser on appellant's right of way at the time of the acts complained of, yet as appellant knew of her presence and knew of her condition and the attendant perils to her in carrying out its designs, it was the appellant's duty to exercise ordinary care to prevent injury to her in the execution of its plans. This is no novel rule but the old established one of the duty one owes to trespassers. The other objections concerning the evidence we regard as too trivial to merit comment.

That the damages awarded are not excessive seems plain to us in the light of the evidence regarding the appellee's pain and suffering prior and subsequent to her miscarriage and also regarding her present physical condition as contrasted to such condition before the acts herein complained of.

Lastly, the criticisms of the instructions given and the complaint of refused instructions are without merit. What we have heretofore said with reference to the peremptory instruction asked for by appellant disposes of the criticisms in detail of instruction No. 1, except the one wherein appellant says that the trial court permitted a recovery if appellant simply threw rails, etc., around the cars without striking or jarring them. Counsel is in error in this, for the court distinctly told the jury that they could find for appellee only if the appellant threw the rails, etc., around or against the cars, "*thereby*" striking them, etc. Instruction C offered by appellant was not an accurate statement of the law as herein set out. Instruction No. 3 given by the court exonerated appellant if appellee's damages were caused solely by fright, unaccompanied by physical impact. This was all the appellant was entitled to in this connection. So far as instructions A and B are concerned, appellant was not entitled to them, because as stated, even though appellee was a trespasser, yet if appellant did the acts which witnesses say it did under the circumstances of this case, it was liable.

There being no errors prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.