**Broderick ELZA, Kris Elza, Andrew Wayne Elza, and Tylor Monroe Elza, Appellants (Plaintiffs below),**

v.

**LIBERTY LOAN CORPORATION, Everett B. Best, S. M. Friedrich, C. Richard Ickrath, James M. Lappe, Thomas P. Slaughter, Harold Frederick, and Judy Foreman, Appellees (Defendants below).**

No. 2–1180A371.

Supreme Court of Indiana.

Oct. 21, 1981.

Barry A. Macey, Andrew C. Charnstrom, Richard J. Swanson, Miles, Segal & Macey, Indianapolis, for appellants.

John P. Price, Martha S. Hollingsworth, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellees.

## ON PETITION TO TRANSFER

HUNTER, Justice, dissenting to denial of transfer.

I must respectfully dissent from this Court's refusal to grant the Elzas' petition to transfer, wherein they seek review of the memorandum decision of the Second District Court of Appeals, *Elza et al. v. Liberty Loan Corporation*, 422 N.E.2d 760 (1981) (Sullivan, J., concurring with opinion). There, on the basis of *Boden v. Del-Mar Garage*, (1933) 205 Ind. 59, 185 N.E. 860, and what is commonly characterized as the "impact" rule, the Court of Appeals affirmed the partial summary judgment granted Liberty Loan Corporation. For reasons explained hereinafter, I would grant transfer, vacate the opinion of the Court of Appeals, and reverse the trial court's entry of partial summary judgment.

From the outset it is imperative to emphasize that the cause before us does not involve allegations of negligence, as are generally present in cases involving the "impact" doctrine. Rather, the case at bar rests on the Elzas' contention that employees of the defendant loan company entered their home and "intentionally, wilfully and maliciously" threatened, assaulted, struck and beat Broderick Elza, father of the household. The nature of the conduct allegedly present here takes this case outside the purview of the "impact" rule.

For purposes of the question before us, we are required by our procedural rules to accept as true the Elzas' allegations of fact. Ind.R.Tr.P. 56; *Papp v. City of Hammond*, (1967) 248 Ind. 637, 230 N.E.2d 326. The facts as alleged are not controverted by any

*evidence*[1] offered by the Liberty Loan Corporation in support of its motion; rather the allegations are supported by Broderick Elza's answers to interrogatories propounded by Liberty Loan.

The record reveals that on May 31, 1978, Broderick Elza, his wife, Kris, and their two sons, Andrew (age four) and Tylor (age three), were at their home in Richmond, Indiana. There was a knock on the door, and Harold Frederick and Judy Foreman requested admittance. Unbeknownst to the Elzas, Frederick and Foreman were employees of the Liberty Loan Corporation.

Once inside, the two employees produced a list of furniture which they claimed was subject to a mortgage held by Liberty Loan. A discussion between the employees and the Elzas ensued; the Elzas maintained some of the furniture listed had belonged to Kris "for years." Frederick and Foreman then left the premises.

In approximately half an hour, they returned to the Elza household. A second discussion occurred, after which Foreman left the house. At that point Harold Frederick called Broderick Elza a "lying little punk" and told Broderick to meet him "behind Liberty Loan at 6:00." Broderick asked Frederick to leave the house. Then, with Kris, Andrew, and Tylor watching from ten feet away, Frederick proceeded to shove Broderick against the sink, counter and cabinets, stick his finger in Broderick's face, and beat upon Broderick's chest. He again told Broderick to "meet him later" so he could "finish" Broderick. Frederick then left the Elzas' house and joined Foreman in the car. The two employees sat in the Elzas' driveway for "several minutes" and finally departed.

The Elzas filed suit to recover damages they allegedly sustained by virtue of Frederick's conduct within their home. Their complaint included counts whereby Kris, Andrew, and Tylor each sought damages for the mental distress they suffered as a result of watching Frederick batter Broder-

ick. These counts were the subject of Liberty Loan Corporation's motion for partial summary judgment.

Liberty Loan based its motion upon the *general* rule of this jurisdiction that damages for mental distress are not recoverable unless the claimant suffered contemporaneous physical impact. The Elzas responded that the so-called "impact" rule applied only to cases of negligence, and not, as present here, to conduct of an intentional nature; they asserted Indiana case precedent permitted recovery for emotional disturbances proximately caused by an intentional act. The trial court granted the motion. Judgment was entered on the counts, and the Elzas perfected their appeal.

The parties again presented their opposing contentions. The Court of Appeals, relying on the "impact" rule as implemented in *Boden v. Del-Mar Garage, supra*, upheld the trial court. Judge Sullivan, who issued a concurring opinion, premised his agreement with the majority solely on respect for *stare decisis*. His concurring opinion reads in its entirety:

> "I concur because *Boden v. Del-Mar Garage* (1933) 205 Ind. 59, 185 N.E. 860 is binding upon us. In my view, however, it would not be inappropriate for our Supreme Court to reconsider that precedent in the light of the current law in other jurisdictions recognizing a right of recovery for the intentional infliction of mental distress. *See* Annot., 5 A.L.R.4th 833 (1981); Annot., 94 A.L.R.3d 486 (1979); 38 Am.Jur.2d, *Fright, Shock, and Mental Disturbance* § 38 (and cases cited therein) (1968)." *Elza et al. v. Liberty Loan Corporation et al., supra*, at 6.

I am not convinced that *Boden* is dispositive of the facts; *Boden*, which was overruled in part by *Troue v. Marker*, (1969) 253 Ind. 284, 252 N.E.2d 800, stands in irreconcilable conflict with numerous cases on the point of law before us. For that reason alone this Court should address the Elzas' petition to transfer. I wholeheartedly agree with

1. In its answer to the Elzas' complaint, defendant has generally but not specifically denied the facts alleged.

Judge Sullivan, however, that if *Boden* is the current law of this jurisdiction, then this Court should re-examine that precedent. Our re-assessment would not only warrant an examination of the law of other jurisdictions, but also the common law precedent of Indiana which *Boden* directly contradicts. The case before us is entirely appropriate to that purpose, for the parties, at every level of these proceedings, have pursued their contrary positions with an unfailing finesse.

In *Boden v. Del-Mar Garage, supra*, plaintiff sought recovery, among other alleged damages, for the mental distress she sustained by watching her husband be knocked down and injured by an automobile. She alleged the driver had intentionally and maliciously hit her husband. The trial court sustained a demurrer to her complaint. On appeal, this Court upheld the trial court's judgment on the basis that there was "no physical injury to her." 205 Ind. at 70, 185 N.E. at 864. Having based its decision on the "impact" rule, albeit without citation to legal authority, the Court continued:

> "The appellant contends, by reason of the fact that her complaint is based upon a wilful and intentional tort, she is entitled to recover, and cites cases to support her contention. The cases cited, however, are practically all based upon actions for alienation of affections and are not in point on the question involved. In this class of cases the act of interfering with the marital relation is wilful and malicious and its natural and probable result is to accomplish the injury complained of and it is not necessary that there should be any pecuniary loss." *Id.*

We, of course, are not cognizant of the cases argued to the Court in *Boden*; re-

search reveals, however, that extant at that time were numerous cases directly contrary to the Court's position.

Those cases stood, *and continue to stand*, for the proposition that the recovery of damages for mental distress in tort actions does not require proof of contemporaneous physical impact, when two conditions are present: (1) the defendant's conduct was intentional, and (2) the conduct should reasonably have been anticipated to provoke a severe emotional disturbance. *Montgomery v. Crum*, (1928) 199 Ind. 660, 161 N.E. 251 (abduction of plaintiff's child gives rise to compensable injuries for mental distress); *Harness v. Steele*, (1902) 159 Ind. 286, 64 N.E. 875 (false arrest and imprisonment gives rise to compensable injuries for humiliation and mortification); *Kline v. Kline*, (1902) 158 Ind. 602, 64 N.E. 9 (assault gives rise to compensable injuries for fright and mental anguish); *Pennsylvania Co. v. Bray*, (1890) 125 Ind. 229, 25 N.E. 439 (wrongful ejection from train gives rise to compensable injury for indignity); *Felkner v. Scarlet*, (1867) 29 Ind. 154 (seduction of daughter gives rise to compensable injuries for family dishonor and injured feelings); *Pruitt v. Cox*, (1863) 21 Ind. 15 (seduction of daughter gives rise to compensable mental distress).

Each of these cases involved intentional conduct. In each, mental distress was recognized as recoverable without proof of physical impact to the party claiming the distress. In *Montgomery*, *Felkner*, and *Pruitt*, third party family members were permitted to recover for their mental distress. Why the Court in *Boden* ignored this precedent can only be the subject of speculation;[2] suffice it to say that *Boden* stands

---

**2.** A reading of the Court's opinion in *Boden v. Del-Mar Garage, supra*, clearly suggests its reasoning was based on the then-prevailing view of a married woman's legal status, which limited her right to sue as an individual. That archaic notion was eloquently debunked by Justice Arterburn in *Troue v. Marker, supra*, where this Court overruled *Boden* on the question whether a wife could recover for loss of consortium. Justice Arterburn explained:

> "In this case we are dealing with a principle or doctrine of law that has its origin in an archaic time, when a wife was more a servant than a companion and partner. This principle of law, which denied the wife the right to sue, had its origin in what is known as coverture of a married woman, which limited her legal capacity to sue or assert her rights as an individual.
>
> \*    \*    \*    \*    \*    \*

in irreconcilable conflict with the cases cited heretofore.

In view of the weight of authority which directly contravenes *Boden v. Del-Mar Garage, supra,* it is no surprise that *Boden* has never been cited as authority for the question before us. Meanwhile, post-*Boden,* our courts have continued to recognize the rule in *Montgomery v. Crum, supra; Harness v. Steele, supra; Kline v. Kline, supra; Pennsylvania Co. v. Bray, supra;* and *Felkner v. Scarlet, supra,* as controlling. *See, e. g., Charlie Stuart Oldsmobile, Inc. v. Smith,* (1976) 171 Ind.App. 315, 357 N.E.2d 247; *Aetna Life Ins. Co. v. Burton,* (1938) 104 Ind.App. 576, 12 N.E.2d 360.

In *Aetna Life Ins. Co. v. Burton, supra,* plaintiff sought damages for mental distress allegedly suffered by reason of the unauthorized autopsy defendant conducted on her deceased husband. Notwithstanding the fact plaintiff had not witnessed defendant's act, the appellate court upheld plaintiff's right to recover for her mental distress. In so ruling, *the court expressly rejected defendant's contention that plaintiff's emotional suffering was not compensable because she had not suffered contemporaneous physical impact.* The court stated unequivocally:

"We do not see where the appellant's demurrer has any standing whatsoever, as it has long been the law in Indiana that mental suffering and mental anguish need not necessarily be accompanied by physical injury where the act was willful or wrongful or was an unlawful act which resulted in the invasion of the legal rights of another. *Wolf v. Trinkle et al.,* 1885, 103 Ind. 355, 3 N.E. 110; *Renihan et al. v. Wright et al.,* 1890, 125 Ind. 536, 25 N.E. 822, 9 L.R.A. 514, 21 Am.St.Rep. 249; *McCarty v. Kinsey,* 1900, 154 Ind. 447, 57 N.E. 108; *Kline v. Kline,* 1902, 158 Ind. 602, 64 N.E. 9, 58 L.R.A. 397; *Montgomery v. Crum,* 1928, 199 Ind. 660, 161 N.E. 251; *Meek v. State of Indiana,* 1933, 205 Ind. 102, 185 N.E. 899, and Restatement of Torts, § 312." *Id.,* 104 Ind.App. at 579, 12 N.E.2d at 361.

Here, defendant attempts to distinguish *Aetna Life Ins. Co. v. Burton, supra,* on the basis that it involved a corpse. We need look no further than the cases cited herein to find our jurisdiction accords respect for the bodies of the living as well as the dead. *Montgomery v. Crum, supra; Harness v. Steele, supra; Kline v. Kline, supra; Felkner v. Scarlet, supra.*

Our rule that permits recovery for mental distress which results from an intentional act which reasonably should have been foreseen to cause emotional disturbance was again spelled out in *Charlie Stuart Oldsmobile, Inc. v. Smith, supra.* The court explained:

"However, the general [impact] rule has been subject to one exception. Indiana courts have awarded compensatory damages for mental anguish unaccompanied by a physical injury in certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. False imprisonment and assault actions are examples of instances in which a disagreeable emotional experience would normally be expected to be inextricably intertwined with the nature of the deliberate wrong committed, thereby lending credence to a claim for mental disturbance. The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension." 171 Ind.App. at 327, 357 N.E.2d at 254.

The exception was not applied in *Charlie Stuart Oldsmobile* because, at trial, the evi-

---

"Of course, the law and times of which Blackstone spoke have changed. That was before the days when women were given the right to vote, to make contracts and own their separate property, and before the legislation generally known as the Married Women's Act (Burns' §§ 38–101—38–126). Since that time the unity concept of marriage has in a large part given way to the partner concept whereby a married woman stands as an equal to her husband in the eyes of the law." 253 Ind. at 289–90, 252 N.E.2d at 803–4.

dence established defendant's conduct was merely negligent.

Here, the Court of Appeals recognized the existence of the exception, quoting much of the above language from *Charlie Stuart Oldsmobile* in its memorandum decision. The Court of Appeals then followed the quote with its restatement of the requirements necessary to trigger the exception to the "impact" rule:

"Thus, as a minimum, [1] *the exception to the impact rule first requires a host action in the form of a tort directed to or committed against the claimant.* Next, [2] the exception requires that, at the time the legal right is violated by the host tort, it appear from either the type of tort or the means or manner by which the host tort is committed (such as willfully, callously, or maliciously) that there is a likelihood emotional stress will follow." *Elza et al. v. Liberty Loan Corporation, supra,* at 4–5 [emphasis added].

The case precedent cited herein simply does not support requirement "1," as emphasized, which was attributed to the exception. The host torts at issue in *Montgomery v. Crum, supra; Felkner v. Scarlet, supra; Pruitt v. Cox, supra*; and *Aetna Life Ins. Co. v. Burton, supra,* were not directed at the person claiming mental distress, yet recovery was allowed. In this respect, the Court of Appeals contravened case precedent.

The Court of Appeals did correctly state that the applicability of the exception is dependent upon proof that emotional distress should reasonably have been anticipated to follow from the intentional tort. With respect to this requirement, the Court of Appeals made the following factual analysis:

"In fact, even assuming a trespass was committed against their right to possession of their home, as they argue, trespass, in and of itself, is not a tort which by its nature is likely to provoke emotional distress. *Indiana Motorcycle Ass'n. v. Hudson,* (1980) Ind.App., 399 N.E.2d 775. In addition, neither the undisputed facts nor any reasonable inferences drawn from them would support a finding that the assumed trespass was committed in a manner or means by which there was a likelihood that emotional stress would follow." *Elza et al. v. Liberty Loan Corporation et al., supra,* at 5.

I agree a trespass arguably occurred, for Broderick Elza did request Frederick to leave the house. *That is not, and never has been, however, the focus of the Elzas' allegations.*

The Elzas alleged that Frederick intentionally, maliciously, and willfully threatened, assaulted, struck, and beat Broderick Elza. All evidence proffered for and against the motion for partial summary judgment supports the allegations. It is elementary that the alleged tort at issue is a battery.

Was it committed in a manner and under circumstances by which it was likely to cause emotional distress to Kris, wife of Broderick, and Andrew and Tylor, the four year old and three year old sons of Broderick? Based on the allegations and evidence presented, as viewed within the standard incumbent upon us in the review of summary judgments, it cannot be said as a matter of law it should not reasonably have been foreseen that the intentional tort would cause emotional distress to Broderick's family members.

In the determination whether summary judgment is appropriate, the facts established by the party opposing the motion must be accepted as true. All questions of doubt and reasonable inferences which can be drawn must be resolved in favor of the party opposing the motion. *Papp v. City of Hammond, supra; Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735; *Barbre v. Indianapolis Water Co.,* (1980) Ind.App., 400 N.E.2d 1142.

The record reveals Frederick and Foreman entered the Elza household, engaged the Elzas in conversation, left, and within a half-hour returned to the home. The record further reveals Kris, Andrew, and Tylor were standing ten feet away from Broderick and Frederick when the latter initiated his verbal abuse, threats ("meet [me] later"

so I can "finish you [Broderick]") and battering of Broderick. The only inference which can be drawn from this factual scenario is that Frederick and Foreman realized Broderick's wife and children were present and would witness the battering, threats, and verbal abuse in which Frederick eventually engaged.

Nor can it be said as a matter of law that the alleged conduct should not have been anticipated to cause emotional trauma to Kris, wife of Broderick, or his four year old and three year old sons, Andrew and Tylor. The existence and extent of their mental distress is simply a factual question which *should* be left for a jury's resolution, as should all factual issues raised in the Elzas' complaint.

Finally, it should be noted that our case precedent regarding the applicability of the exception to the "impact" rule speaks of the necessity that the intentional tort effect an invasion of a legal right. *Charlie Stuart Oldsmobile, Inc. v. Smith, supra.* Obviously, an actual battery satisfies the requirement under the case precedent cited herein. That is all the more true, it seems, by virtue of the fact it was committed within the sanctity of the Elzas' home and in the presence of Broderick's wife and their children of tender years.

This jurisdiction has specifically held that a creditor's agent may not by threat of force attempt to insure a debtor's compliance with their contractual agreement.

*Singer Sewing Machine Co. v. Phipps,* (1911) 49 Ind.App. 116, 94 N.E. 793. Here, the record reveals verbal abuse, physical battering, and Frederick's repeated insistence that Broderick "meet" him behind Liberty Loan so Frederick could "finish" him.[3]

For all these reasons, there can be no doubt that pursuant to the case precedent of this jurisdiction, Kris, Tylor and Andrew Elza should be afforded the opportunity to present their claims for mental distress to a jury. To afford them that opportunity would be consistent both with the Restatement (Second) of Torts § 46(2) (American Law Institute 1965) and the vast majority of this nation's jurisdictions which have considered the question before us. *See, Savage v. Boies,* (1954) 77 Ariz. 355, 272 P.2d 349; *Wilson v. Wilkins,* (1930) 181 Ark. 137, 25 S.W.2d 428; *Moore v. Greene* (9th Cir. 1970) 431 F.2d 584 (applying California law); *Rugg v. McCarty,* (1970) 173 Colo. 170, 476 P.2d 753; *Hiers v. Cohen,* (1973) 31 Conn.Supp. 305, 329 A.2d 609; *Ford Motor Credit Co. v. Sheehan,* (1979) Fla.App., 373 So.2d 956, *cert. den.* Fla., 379 So.2d 204; *Kuhr Bros., Inc. v. Spahos,* (1954) 89 Ga. App. 885, 81 S.E.2d 491; *Fraser v. Morrison,* (1952) 39 Hawaii 370; *Public Finance Corp. v. Davis,* (1976) 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 87 A.L.R.3d 187; *Beneficial Finance Co. v. Lamos,* (1970) Iowa, 179 N.W.2d 573; *Dawson v. Associates Financial Services Co.,* (1974) 215 Kan. 814, 529 P.2d 104; *Brown v. Crawford,* (1943) 296

3. In response to conduct of this nature, many jurisdictions have recognized as an independent tort the intentional infliction of mental distress. As Dean Prosser explained:

"[T]he rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.

\* \* \* \* \* \*

"It is on this basis that the tort action has been used as a potent counter-weapon against the more outrageous high-pressure methods of collection agencies and other creditors. These are sufficiently well known, ranging from violent cursing, abuse, and accusations of dishonesty, through a series of letters in lurid envelopes bearing a picture of

lightning about to strike, which repeatedly threaten arrest, ruination of credit, or a suit which is never brought, or telephone calls around the clock, or attempts to pile up the pressure by involving the plaintiff's employer, his relatives, his neighbors or the public in the controversy, up to a call to a neighbor's telephone for an 'emergency message' which will be a 'great shock,' and a proposal to a woman to 'take it out in trade.'" Prosser, Law of Torts, § 12, p. 56–7 (1971) (footnotes omitted).

This jurisdiction does not recognize the tort of intentional infliction of mental distress, as explained in *Kaletha v. Bortz Elevator Co.,* (1978) Ind.App., 383 N.E.2d 1071, where the evidence revealed no malice, fraud, etc., or knowledge from which it could be anticipated defendant's act would cause an emotional disturbance.

Ky. 249, 177 S.W.2d 1; *Nickerson v. Hodges*, (1920) 146 La. 735, 84 So. 37, 9 A.L.R. 361; *Spade v. Lynn & B.R. Co.*, (1897) 168 Mass. 285, 47 N.E. 88; *Saenger Theatres Corp. v. Herndon*, (1938) 180 Miss. 791, 178 So. 86; *Warrem v. Parrish*, (1969) Mo., 436 S.W.2d 670; *LaSalle Extension University v. Fogarty*, (1934) 126 Neb. 457, 253 N.W. 424; *Burrus v. Nevada-Calif.-Or. R. Co.*, (1914) 38 Nev. 156, 145 P. 926; *Long v. Beneficial Finance Co.*, (1972) 39 App.Div.2d 11, 330 N.Y.S.2d 664; *Reeves v. Melton*, (1973) Okl.App., 518 P.2d 57; *Turman v. Central Billing Bureau, Inc.*, (1977) 279 Or. 443, 568 P.2d 1382; *Jones v. Nissenbaum, Rudolph, & Seidner*, (1976) 244 Pa.Super. 377, 368 A.2d 770; *Medlin v. Allied Invest. Co.*, (1966) 217 Tenn. 469, 398 S.W.2d 270; *Stafford v. Steward*, (1956) Tex.Civ.App., 295 S.W.2d 665; *Jeppsen v. Jensen*, (1916) 47 Utah 536, 155 P. 429; *Ferrell v. Chesapeake & O.R. Employees Hospital Ass'n* (W.D.Va.1971) 336 F.Supp. 833 (applying Virginia law); *Grimsby v. Samson*, (1975) 85 Wash.2d 52, 530 P.2d 291; *Monteleone v. Cooperative Transit Co.*, (1945) 128 W.Va. 340, 36 S.E.2d 475. As the case names imply, in many of the authorities cited the intentional conduct likely to cause emotional distress was an unreasonable debt collection practice. *See generally*, Annot., 87 A.L.R.3d 201 (1978) Hubbard, *Recovery for Creditor Harassment*, 46 Tex.L.Rev. 950 (1968); Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv.L. Rev. 1033 (1936); Prosser, *Insult and Outrage*, 44 Cal.L.Rev. 40 (1956); Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich.L.Rev. 874 (1939).

To be sure, some of the above jurisdictions have permitted recovery in circumstances such as those present on bases[4] other than the exception to the "impact" rule at issue here. That is necessarily so, however, for in addition to Indiana, only five of our nation's fifty-one jurisdictions today regard the "impact" rule as a viable proposition of law. *Butchikas v. Travelers'*

*Indem. Co.*, (1977) Fla., 343 So.2d 816; *Howard v. Bloodworth*, (1976) 137 Ga.App. 478, 224 S.E.2d 122; *Benza v. Shulman Air Freight*, (1977) 46 Ill.App.3d 521, 5 Ill.Dec. 91, 361 N.E.2d 91; *Louisville & N. R.R. v. Roberts*, (1925) 207 Ky. 310, 269 S.W. 333; *McCardle v. George B. Peck Dry Goods Co.*, (1915) 191 Mo.App. 263, 177 S.W. 1095. Each of these five jurisdictions would recognize the Elzas' claims of mental distress as actionable under the circumstances alleged here. *Ford Motor Credit Co. v. Sheehan, supra* (Florida); *Kuhr Bros., Inc. v. Spahos, supra* (Georgia); *Public Finance Corp. v. Davis, supra* (Illinois); *Brown v. Crawford, supra* (Kentucky); *Warrem v. Parrish, supra* (Missouri).

The Court of Appeals' decision in the instant case, then, represents an unprecedented result in the context of these authorities. We refuse to review a decision which invokes an expanded application of the "impact" rule, while every other jurisdiction which ever adopted its authority has since discarded the rule or invoked the exception to circumstances like those present here. That is a particularly dubious result when measured against the recent criticism leveled at the "impact" rule by our Third District Court of Appeals in *Kroger Co. v. Beck*, (1978) Ind.App., 375 N.E.2d 640, as well as the persuasive arguments for the abrogation of the rule advanced by a commentator of this jurisdiction. Note, *Recovery for Negligent Infliction of Emotional Distress: Changing the Impact Rule in Indiana*, 54 Ind.L.J. 467 (1979) (hereinafter cited as "*Impact Rule in Indiana, supra*").

In the face of the overwhelming authority directly contrary to the Court of Appeals' opinion and *Boden*, it is appropriate, as Judge Sullivan recognized, that we re-examine the "impact" rule and its underpinnings, as well as the rationale for the exception the majority of this Court refuses to invoke here. The reasons for the rule and its exception is a subject which has

---

4. *See* Note, *Recovery for Negligent Infliction of Emotional Distress: Changing the Impact Rule in Indiana*, 54 Ind.L.J. 467 (1979). There, the author discussed the "zone of danger" rule,

the "foreseeability" test, and the "duty" approach which jurisdictions not favoring the "impact" rule have variously adopted.

received little attention in our case law; that is true even though *Victorian Railway Commissioners v. Coultas*, (1888) 13 App. Cas. 222, the English authority upon which this jurisdiction relied in part in adopting the "impact" rule in *Kalen v. Terre Haute & I.R.R.*, (1897) 18 Ind.App. 202, 47 N.E. 694, was expressly rejected by the King's Bench in 1901. *Dulieu v. White & Sons*, (1901) 2 K.B. 669. In abrogating the "impact" doctrine only thirteen years after its inception, the King's Bench stated:

> "[i]f impact be not necessary, and if . . . the fear is proved to have naturally and directly produced physical effects, so that the ill results of the negligence which caused the fear are as measurable in damages as the same results would be if they arose from an actual impact, why should not an action for these damages lie just as well as it lies where there has been an actual impact?" *Id.* at 675; *see also, Impact Doctrine in Indiana, supra,* at 472 n. 40.

An examination of the rule, its exception, and the reasons therefor is particularly illuminating on the question before us.

The exception to the "impact" rule, of course, gets its existence from the fact that the reasons which give rise to the general rule, however dubious · that ratiocination, simply dissolve when the nature of the excepted conduct—*"intentional conduct which should reasonably have been anticipated to cause emotional distress"*—is contemplated. Courts and commentators alike generally attribute four reasons to the existence of the general "impact" requirement. *See generally, Impact Rule in Indiana, supra.*

A primary factor in the development of the impact doctrine was the perception that it served to eliminate fraudulent claims. *Kalen v. Terre Haute & I. R.R., supra.* It is doubtful that proof of "impact," however minimal, provides assurance that a claim of mental distress is genuine. *See, e. g., Kroger Co. v. Beck, supra* (slight "pricking" of throat by hypodermic needle in steak held sufficient to sustain mental distress claim). It is an arbitrary rule which permits recovery under the facts of *Kroger Co. v. Beck,*

*supra,* yet as a matter of law denies recovery to family members who witness the battering, threats and humiliation dealt their father and husband. To perpetuate the protection against fraudulent claims, we, like the Restatement (Second) of Torts § 46(2), *supra,* and numerous other jurisdictions, could limit recovery for mental distress to members of the immediate family who witness intentional conduct directed at a family member. *See, e. g., Grimsby v. Sampson,* (1975) 85 Wash.2d 52, 530 P.2d 291; *see generally,* Annot., 94 A.L.R.3d 486 and cases collected· therein.

But to turn our backs on the Elzas' claim as one which the law regards as presumptively fraudulent is, under the facts alleged, anathema to the venerable belief that strong intra-familial bonds are a wellspring of a sound society. Significantly, Liberty Loan has argued the general policy consideration that the "impact" requirement minimizes fraudulent claims; for obvious reasons, however, it has not argued that under the facts alleged the Elzas' claims of mental distress are of a fraudulent nature. The argument simply has no merit in the circumstances present here.

The second reason generally proffered for the existence of the "impact" rule is the argument that it prevents a flood of litigation in the courts. *Kalen v. Terre Haute & I. R.R., supra; Impact Rule in Indiana, supra.* The rationale has been debunked as myth by jurisdictions which have discarded the general "impact" requirement, as well as by commentators. *See, e. g., Okrina v. Midwestern Corp.,* (1969) 282 Minn. 400, 165 N.W.2d 259; *Niederman v. Brodsky,* (1970) 436 Pa. 401, 261 A.2d 84; Lambert, *Tort Liability for Psychic Injuries,* 41 B.U.L.Rev. 584 (1961). More significantly, the essence of the argument has been dismissed as an affront to the constitutionally based proposition that our judicial system is open for the redress of its citizens' injuries. Dean Prosser explained:

> "It is the business of the law to remedy wrongs that deserve it, even at the expense of a 'flood of litigation'; and it is a pitiful confession of incompetence on the

part of any court of justice to deny relief upon the ground that it will give the court too much work to do." Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich.L.Rev. 874, 877 (1939) (footnotes omitted).

Article 1, Section 12 of our Indiana Constitution provides that every person "shall have remedy by due course of law" for injury done to him or her. It is a confession of judicial impotence to right wrongs if the Elzas cannot be permitted to at least present their claims in a court of law for a resolution of their contentions. *See Niederman v. Brodsky, supra.*

Whatever validity may be attached to an argument which rests on the proposition that it is better to deny access to the courts than to increase the judicial caseload, the concern need not bother us here. A *limited* class of litigants is provided the opportunity to present claims under the *exception* to the impact rule, which affects only victims of intentional misconduct reasonably likely to cause mental distress. In short, the implementation of the exception we at least heretofore have recognized would prompt no avalanche of litigation, unless conduct of the reprehensible type endured by the Elzas is commonplace in this jurisdiction. Again, to protect against the fear of a deluge of litigation, the scope of our exception could be limited to permit recovery only for members of the immediate family subjected to the intentional misconduct.

The third argument which prompted the existence of the "impact" doctrine involved the matter of causation. Although the rationale has been variously stated, its essence lies in the proposition that the proximate cause or cause-in-fact of mental distress is not susceptible of ascertainment. *Cleveland, C.C. & St. L. Ry. v. Stewart*, (1900) 24 Ind.App. 374, 56 N.E. 917; *Impact Rule in Indiana, supra; Niederman v. Brodsky, supra.* The rationale no doubt was a valid concern at the end of the nineteenth century; this jurisdiction has recognized, however, that advances in medical science have undermined the general validity of the argument, for we permit recovery for mental distress in a wide variety of situations. See cases cited in *Boland v. Greer*, (1981) Ind., 422 N.E.2d 1236, 1238 (Hunter, J., dissenting to denial of transfer).

It was the continually-evolving state of medical science which prompted this Court to its recent recognition of "brain death" as a legal definition for the cessation of life. *Swafford v. State*, (1981) Ind., 421 N.E.2d 596. Likewise, it was the present-day state of medical science which prompted the Pennsylvania Supreme Court to discard the impact rule in *Niederman v. Brodsky, supra.* The Court stated:

"While we agree that this might have been an appropriate conclusion because of the lack of sophistication in the medical field when the impact doctrine was first announced in 1888, it would presently be inappropriate for us to ignore all of the phenomenal advances medical science has achieved in the last eighty years. Today diseases of the heart, for example, are comprehended much more fully (to the extent that open heart surgery is almost an everyday occurrence), and the effects of hyperemotional states of the human body no longer are shrouded in mystery or myth.

"New equipment and research, improved education and diagnostic techniques, and an increased professional understanding of disease in general require us now to give greater credit to medical evidence. Other jurisdictions have also recognized that this advancement in the medical arts should and could be legitimately reflected in changes in the legal field. *See, e. g. Battalla v. State*, 10 N.Y.2d 237, 219 N.Y.S. 34, 176 N.E.2d 729 (1961) ('we must * * * rely to an extent on the contemporary sophistication of the medical profession'); *Robb v. Pennsylvania Railroad Company*, 210 A.2d 709, 712 (Del. 1965) ('the early difficulty in tracing a resulting injury back through fright or nervous shock has been minimized by the advance of science')." *Id.*, 436 Pa. at 405–6, 261 A.2d at 86 (footnotes omitted).

The logical invalidity of the argument is exemplified by the fact that any impact, *no*

*matter how minimal,* is sufficient to permit recovery. The slightest "pricking" cannot reasonably be said to somehow establish that a claimant's mental distress flowed from an incident (*Kroger Co. v. Beck, supra*), while as a matter of law a lack of impact cannot be held to bar a claimant's recovery on the basis causation cannot be shown.

We entrust juries to evaluate a claim of mental distress upon the basis of "human experience." *New York, Chicago & St. Louis R. Co. v. Henderson,* (1957) 237 Ind. 456, 146 N.E.2d 531; *State v. Daley,* (1972) 153 Ind.App. 330, 287 N.E.2d 552. We entrust juries to evaluate the degree of reliability which should be attached to testimony in such highly technical matters as the nuances of neutron activation analysis. *Jones v. State,* Ind., 425 N.E.2d 128 (1981). Likewise, jurors, as we recognize in cases where recovery for mental distress is already permitted, are equipped to evaluate psychobiological testimony and employ the human experience in resolving whether any particular incident caused the claimed mental distress. Difficulty of proof should never, in any case, preclude a claimant from attempting to convince the trier of fact of the truth of a claim. *Falzone v. Busch,* (1965) 45 N.J. 559, 214 A.2d 12; *Niederman v. Brodsky, supra.*

It should be noted that our existing exception to the impact rule, which the Court of Appeals refused to invoke here, inveighs against the concerns surrounding proof of causation. The exception provides relief for intentional misconduct which should *reasonably have been anticipated to cause emotional distress.* Consequently, by definition, the exception provides the jury with a standard against which causation may be weighed.

The final reason from which the "impact" doctrine got its birth was the claim that damages for mental distress are too speculative and uncertain to award recovery. *Kalen v. Terre Haute & I. R.R., supra; Impact Rule in Indiana, supra.* That claim, simply stated, is a red herring. It is true that damages for mental distress are not susceptible of exact ascertainment by mathematical computation, but that is not required by the law. *New York, Chicago & St. Louis R. Co. v. Henderson, supra; Friendship Farms Camps, Inc. v. Parsons,* (1977) 172 Ind.App. 73, 359 N.E.2d 280. It is well settled that the existence and degree of psychological injuries may be determined by a jury based on human experience, and so our juries have been entrusted with the responsibility to assess damages for numerous and assorted emotional injuries. *See, e.g. Troue v. Marker,* (1969) 253 Ind. 284, 252 N.E.2d 800 (damages for loss of spouse's society, companionship, and consortium); *New York, Chicago & St. Louis R. Co. v. Henderson, supra* (mental anguish and anxiety resulting from disfigurement and incapacity); *Harness v. Steele,* (1902) 159 Ind. 286, 64 N.E. 875 (humiliation and mortification resulting from public arrest); *Kline v. Kline,* (1902) 158 Ind. 602, 64 N.E. 9 (fright from assault); *Pennsylvania v. Bray,* (1890) 125 Ind. 229, 25 N.E. 439 (indignity for removal from train); *Kroger Co. v. Beck, supra* (emotional distress from attempting to eat steak with hypodermic needle therein).

The requirement that a claimant suffer impact obviously does not lessen the uncertainty inherent to a claim; in *Harness v. Steele, supra, Kline v. Kline, supra,* and *Pennsylvania Co. v. Bray, supra,* the exception to the "impact" rule was applied to permit recovery for mental distress without proof of any impact to the claimant. *See also, Aetna Life Ins. Co. v. Burton, supra.*

Finally, it should be noted the "impact" doctrine had its origins as a rule conceived at the turn of the century to accommodate the willingness to permit recovery for mental distress in particular circumstances. As one commentator has explained:

"The impact rule provided the needed transition from traditional physical injury cases to emotional injury claims by keeping the new action for emotional distress damages within the framework of the old action for physical damages. By allowing recovery for emotional distress which accompanied physical injury, the traditional

concept of real physical injury was broadened to include such distress." *Impact Rule in Indiana, supra,* at 467.

The evolution of the "impact" rule was followed by recognition in this jurisdiction that an exception to the general rule should be created. The implementation of the exception in the various cases cited herein merely reflected the fact that our common law is not as immutable as the laws of the Medes and the Persians, but grows and changes to reflect the realities of our times. As Chief Justice Arterburn explained:

> "[T]he common law of today is not a frozen mold of ancient ideas, but such law is active and dynamic and thus changes with the times and growth of society to meet its needs." *Perkins v. State,* (1969) 252 Ind. 549, 554, 251 N.E.2d 30, 33.

Ironically, the Court of Appeals' decision in the instant case reflects not a refusal to expand a rule, but instead represents a retreat to an archaic rule of law grounded in legal and societal concepts popular in the late nineteenth century.

There are several reasons this Court should grant transfer in the instant case. First of all, *Boden v. Del-Mar Garage, supra,* upon which the Court of Appeals based its decision, stands in irreconcilable conflict with the many cases of this jurisdiction cited herein. Second, it should be the policy of this jurisdiction to discourage reprehensible conduct such as that attributed to the agents of Liberty Loan. Third, the memorandum decision of the Court of Appeals represents an expanded application of the "impact" doctrine in the face of our own courts' and commentators' criticism of the rule, as well as the abrogation and disregard for the "impact" rule prevalent in our sister jurisdictions. Fourth, courts of appellate jurisdiction may not properly indulge the presumption that jurors check their common sense at the courtroom door and are unable to intelligently evaluate claims such as those present here. *See, e.g., Hill v. State,* (1969) 252 Ind. 601, 251 N.E.2d 429; *United States v. Freeman,* (2d Cir. 1966) 357 F.2d 606.

And so, *Boden v. Del-Mar Garage, supra,* is an aberration, an island in the sea of case law of this and other jurisdictions which recognize the "impact" rule, if it be retained at all, simply does not admit of a blanket application. This Court should seize this opportunity to overrule *Boden* and eliminate confusion such as that which its language has here conceived. Lacking a majority here, practitioners are reminded that pursuant to our procedural rules, this Court's denial of transfer, the statements contained herein, and the memorandum decision of the Court of Appeals are without authority as precedent. Ind.R.Ap.P. 11(B)(4); Ind.R.Ap.P. 15(A)(3).

I dissent. For all the foregoing reasons, the petition to transfer should be granted, the opinion of the Court of Appeals should be vacated, and the trial court's entry of partial summary judgment should be reversed.